# EXHIBIT C

## SETTLEMENT AND COOPERATION AGREEMENT

This Settlement and Cooperation Agreement ("**Agreement**") is made and entered into as of the 11th day of June, 2023 (the "**Effective Date**"), by and between Gerald Group, Limited, Gerald Metals SARL, and Gerald Metals, LLC (collectively "**Gerald Group**"), and MLS Berkowitz Investments, LLC ("**MLS**"), and Seth Berkowitz ("**Berkowitz**"), on the one hand, and Strong Empire International Business Intermediation, LLC ("**Empire**"), and Fernanda Alves de Souza ("**de Souza**")(collectively, "**Releasees**"), on the other, having agreed to conditionally resolve any and all potential claims by and between them based upon the terms set forth and contained herein. Each of Gerald Group, MLS, Berkowitz, and Releasees shall be a "**Party**" and collectively, the "**Parties**").

## RECITALS

**WHEREAS,** Gerald Group is a United Kingdom-based commodities trading company focused on merchanting non-ferrous, ferrous, and precious metals and related concentrates and raw materials;

**WHEREAS,** Gerald Group, an affiliate, or a subsidiary entered into contracts with MLS, whereby MLS agreed to supply Gerald Group with a specified volume of tin concentrate for Gerald Group;

**WHEREAS,** Gerald Group delivered Fifty Million Dollars (USD$50,000,000) to MLS in consideration for MLS' delivery of a specified volume of tin concentrate to Gerald Group (the "**MLS Payment**");

**WHEREAS,** Empire provides consulting and commercial advisory services, which include, but are not limited to intermediation of sales of noble metals and prospecting business opportunities between its clients and others relating to the sales of metals and related materials;

**WHEREAS,** MLS transferred no less than approximately Twenty Two Million Two Hundred Forty-Three Thousand Five Hundred Seventy-Four Dollars (USD$22,243,574) (the total actual paid amount, being the "**Payment**") to Empire for the purpose of paying Supplier for a specified volume of tin concentrate that was ultimately to be delivered to Gerald Group;

**WHEREAS,** Empire transferred directly or with the assistance of third parties no less than approximately Nineteen Million Four-Hundred Thousand Dollars (USD19,400,000) pursuant to one Mr. Diego Possebon's (a Brazilian citizen, holder of the CPF 938.957.200-20) (the "Supplier") instructions (collectively, the "**Disbursements**") and for which Empire was paid a commission of no less than approximately Six Hundred Thousand Dollars (USD600,000) (the "**Commission**");

**WHEREAS**, neither Gerald Group nor MLS or any of their parent companies, subsidiaries, affiliates, principals, have received any of the tin concentrate for which Empire delivered funds to procure;

**WHEREAS**, as a result of the foregoing, MLS and Gerald Group may believe that they have claims, including without limitation demands, requests for damages or compensation of any kind, obligations, legal actions, lawsuits, complaints, appellate proceedings, enforcement of rights, petitions, collection of liens, and all causes of action, arising therefrom against Releasees (collectively, the "**Claims**"); and

**WHEREAS**, the Parties wish to enter into this Agreement to avoid the risks and costs of litigation and to conditionally settle, compromise, and resolve the Claims in accordance with the terms of this Agreement.

**NOW THEREFORE**, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## CONDITIONAL SETTLEMENT TERMS

1. **Recitals.** The Parties represent and warrant that the recitals above are true and correct and incorporate same within this Agreement by this reference.

2. **Releases and Covenant Not to Sue.**

    2.1 Upon the completion of the Cooperation Requirements set forth in Section 3 below and subject in all instances to the Release Requirement in Section 5 below, Gerald Group, on behalf of themselves, their parent companies, subsidiaries, affiliates, predecessors, successors, assigns, principals, employees, agents, directors, officers, managers, members, insurers, equity holders, partners, attorneys, and all other agents or representatives (collectively, "**Releasors**") shall fully and unconditionally releases, relieves and fully discharge Releasees and their current and former affiliates, principals, directors, officers, managers, partners (to the extent that such are in no way the Supplier or any recipient of the Disbursements) from and against any and all claims, actions, causes of action, rights of action, claims for relief, interest, fees, suits, charges, contracts, complaints, liabilities, expenses, debts or damages, whether based in contract, tort, statutory or other legal or equitable theories known or unknown, disclosed or undisclosed, arising out of or related in any way to the Intermediation, Consultation and International Business Services Agreement or Empire's performance thereof, specifically including without limitation, the Claims.

    2.2 Upon the completion of the Cooperation Requirements set forth in Section 3 below and subject in all instances to the Release Requirement in Section 5 below, MLS, Berkowitz, on behalf of themselves, their parent companies,

2

subsidiaries, affiliates, predecessors, principals, employees, agents, directors, officers, managers, members, insurers, equity holders, partners, successors, assigns, attorneys, and all other agents or representatives shall fully and unconditionally releases, relieves and fully discharge Releasees and their current and former affiliates, principals, directors, officers, managers, partners (to the extent that such are in no way the Supplier or any recipient of the Disbursements) from and against any and all claims, actions, causes of action, rights of action, claims for relief, interest, fees, suits, charges, contracts, complaints, liabilities, expenses, debts or damages, whether based in contract, tort, statutory or other legal or equitable theories known or unknown, disclosed or undisclosed, arising out of or related in any way to the Intermediation, Consultation and International Business Services Agreement or Empire's performance thereof, specifically including without limitation, the Claims.

2.3 Gerald Group, MLS, and Berkowitz represent and warrant that they have not brought, and based upon Releasees' cooperation in accordance with the terms of this Agreement do not intend to and will not assert any claims or actions against Releasees for any alleged breach of this Agreement without at least ten (10) days written notice and opportunity to cure same.

3. **Terms of Cooperation.** Releasees shall (the following in this Section 3 being, the "**Cooperation Requirements**"):

3.1 Within one (1) business day of the Effective Date, provide to Gerald Group data (including without limitation date, amount, recipient, mode of payment (e.g. cash, bank transfer, etc.) and supporting evidence (including copies thereof) of the received Payments and all payments, transfers, or remittances that Releasees in connection with the Disbursements made in the course of performance of the Intermediation, Consultation and International Business Services Agreement, whether in the United States, Brazil, or any other place, under the instructions of Supplier, MLS, or any other parties associated therewith;

3.2 Within two (2) business days of the Effective Date, provide to Gerald Group records (including without limitation any and all written correspondence, emails, text messages, audio files, etc.) of all the communications entertained with Supplier and any other parties in relation to the payments, transfers, or remittances referenced in Section 3.1 *supra*;

3.3 Undertake commercially reasonable measures, including without limitation those requested by Gerald Group or in consultation with Gerald Group, in furtherance of returning or unwinding the payments, transfers, or remittances referenced in Section 3.1 *supra,* which shall include seeking the return of the Payments and to recall the payments made under the Disbursements and communicating with and requesting the recipients of the Disbursements to immediately return such and requesting the immediate

3

return of the funds paid for real estate property in the USA (as instructed by the Supplier) and other similar measures; and

3.4 Upon request, assist Gerald Group in all reasonable requests for a period of at least two (2) years after the Effective Date to recover the Payments and the Disbursements (with such period to be revisited and extended where the Releasees assist or participate in claims which are commenced to recoup the Payments or Disbursements, for the duration of such claims), which may include the supply of additional information or documents and voluntary provision of truthful written or oral statements or testimony.

4. **Payment of Reasonable Expenses.** Within fifteen (15) days of a written request and upon previous approval in writing by Gerald Group, such approval not to be unreasonably withheld, Gerald Group shall pay for all expenses (with sufficient evidence such as receipts being provided on request) that Releasees reasonably incur in furtherance of their performance of the obligations set forth in Sections 3.3 and 3.4, *supra*.

5. **Release & Commissions.**

5.1 Where Gerald Group, with the assistance of the Releasees pursuant to Section 3, recovers the full amount of the Payment (less the Commission) (the "**Release Requirement**"), (i) Gerald Group and MLS shall waive and release any claims or rights they may have in the Commission; and (ii) any and all claims or rights Gerald Group and MLS may have against the Releasees in respect of the recovered Payment and Disbursements shall be waived, released and discharged.

5.2 Gerald Group shall pay to Releasees three percent (3%) of any part of the MLS Payment greater than the amount of the Payment that Gerald Group recovers through or with the involvement or assistance of Releasees within ten (10) days of their request for payment.

5.3 Notwithstanding anything else in this Agreement, at any time where Gerald Group has not recovered the full amount of the Payment, on Gerald Group's election the releases provided for in Section 2 shall not become effective and shall fall away and any and all rights and claims Gerald Group or MLS may have with respect to the Payment and the Disbursements (including the Commission) shall remain in full force and effect and pursuable.

6. **Payment of Legal Fees.** Within fifteen (15) days of the presentment of an invoice, Gerald Group shall pay the legal fees and costs associated with the negotiation, drafting, and editing of this Agreement, limited to an amount of Ten Thousand Dollars (USD$10,000).

7. **Default and Breach.**

7.1 Except as set forth herein, a Party shall be in breach of this Agreement upon ten (10) days' written notice of its failure to comply with any obligation required to be performed pursuant to this Agreement and failure to cure same (following which, where the defaulting party is the Releasees, Gerald Group may elect to immediately on notice suspend or cancel the terms of this Agreement.

8. **Limitations**. Nothing in this Agreement shall be considered as acceptance or agreement by any of the Parties about the legality of the actions taken by any other Party.

9. **Governing Law, Venue, and Forum Selection**. This Agreement shall be construed and interpreted in accordance with the laws of the State of Florida, without regard to conflict of laws provisions. The Parties further agree that should any dispute arise out of or relate to this Agreement, should any condition not be performed and a claim needs to be asserted, or for any other reason should a claim need to be pursued by either of the Parties, such action shall be filed only in a court of competent jurisdiction located in Miami-Dade County, Florida, and agree to submit to the exclusive jurisdiction thereof.

10. **Confidentiality**. The Parties and their attorneys agree that the terms and conditions set forth herein are intended to be confidential. Notwithstanding, it is understood that certain allegations may be brought by Gerald Group to governmental authorities who may investigate the Claims and the actions of others. It is understood that a copy of this Agreement may be provided, if compelled, to any governmental agency investigating the matters relating to the Claims. Notwithstanding, Gerald Group agree that the terms of this Agreement and the negotiations and discussions that led to the existence of same shall remain, to the maximum extent possible, completely confidential and shall not be disclosed to any other individual or entity except as provided herein.

11. **Prevailing Party**. The prevailing party in any action arising out of or related to this Agreement—including the use of the Agreement as a defense to an action by one party against the other—shall be entitled to recover its reasonable attorneys' fees and costs in that litigation or dispute.

12. **Notices.** To the extent Notice to the other **PARTY** is required hereunder, it should be made and should be considered effective through certified mail delivered or successfully sent email to:

**Gerald Group:**
750 Washington Blvd.
Stamford, CT, 06901
United States of America
*spalmer@gerald.com* & *pnikolopoulos@gerald.com*

**To MLS or Berkowitz:**
17 Country Club Lane, Marlboro
New Jersey, 07746
United States of America

5

*seth@mlsmetals.com*

*With a copy to:*

Lowenstein Sandler LLP
c/o Christopher Gerold, Esq.
One Lowenstein Drive
Roseland NJ 07068
*cgerold@lowenstein.com*

**Releasees:**

Strong Empire International Business Intermediation, LLC
7950 NW 53 ST
Suite 337
Miami, FL 33166
Email Empirestrong03@gmail.com

*With a copy to:*

Nelson Mullins Riley & Scarborough LLP
c/o Justin B. Kaplan, Esq.
2 South Biscayne Blvd.
21st Floor
Miami, FL 33131
*Justin.Kaplan@nelsonmullins.com*

13.     **Tax Liability.** It is understood between the Parties that they and their attorneys have not relied upon any representation, express or implied, as to the tax consequences of this Agreement and that each Party shall be responsible for their own tax affairs and liability in connection with any such tax consequences.

14.     **Entire Agreement and Successors in Interest.** This Agreement contains the entire agreement between the Parties hereto with regard to the matters set forth in it and shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors, assigns, and transferees of each Party.

15.     **Modification.** This Agreement may not be amended or modified, in whole or in part, except by an agreement in writing signed by each of the Parties.

16.     **Binding Effect.** All of the terms, representations, and warranties of this Agreement shall be binding upon, inure to the benefit of, and be enforceable by, the Parties hereto and their respective successors, assignees, heirs, legatees, executors, and other legal representatives.

17. **Other Documents**. The Parties act in good faith and shall promptly execute any documents or perform any actions reasonably necessary to consummate the terms of this Agreement.

18. **Further Assurances**. The Parties shall reasonably cooperate with each other to implement the terms and conditions of this Agreement and shall encourage and support third parties to do the same.

19. **Authorization and Necessary Approvals**. Each Party represents and warrants to the other Parties that its execution, delivery, and performance of this Agreement has been duly authorized by all necessary corporate, partnership, or other applicable action, and that this Agreement is valid and binding upon it/him.

20. **Voluntary Agreement**. The Parties individually represent, warrant, and agree that: (a) they are fully aware and clearly understand all of the terms and provisions contained in this Agreement; (b) they have obtained the advice of counsel regarding the matters set forth herein or had the opportunity to do so before entering into this Agreement; (c) they have voluntarily, with full knowledge and without coercion or duress of any kind, entered into this Agreement and the documents executed in connection with this Agreement; (d) they are not relying on any representation, either written or oral, express or implied, made to them by any person other than as set forth in this Agreement; and (e) the consideration received by them to enter into this Agreement and the arrangements contemplated by this Agreement has been actual and adequate.

21. **Ambiguous Provisions**. This Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any Party in any respect. None of the Parties shall be deemed the drafter(s) of this Agreement. In any construction of this Agreement, this Agreement shall not be construed against any of the Parties and any law, legal decision, or rule of construction of contracts to the contrary shall not be applied.

22. **Severability**. The provisions of this Agreement are severable and as such, the invalidity, in whole or in part, of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement. If any clause or provision of this Agreement is determined to be illegal, invalid, or unenforceable under any present or future law by the final judgment of a court of competent jurisdiction, then such clause or provision shall be ineffective, but the remaining provisions of this Agreement will not be affected and shall be construed in the broadest manner to effectuate the provisions of this Agreement. Further, the Parties agree to replace any void or unenforceable provision of this Agreement with a valid and enforceable provision that will achieve, to the extent possible, the economic, business, or other purposes of the void or unenforceable provision.

23. **Waivers; Amendment**. No Party shall assign its rights or transfer its rights or obligations hereunder without the prior written consent of the other Parties. No waiver of any of the terms of this Agreement shall constitute a waiver of any other terms, whether or not similar, nor shall any waiver be a continuing waiver. No waiver shall be binding

unless executed in writing by the Party making the waiver. Any Party may waive any provisions of this Agreement intended for its benefit, but such waiver shall in no way excuse any other Party from the performance of any of its other obligations under this Agreement.

24. **Headings**. Paragraph or other headings contained in this Agreement are for reference purposes only and are not intended to in any way affect the meaning or interpretation of this Agreement.

25. **Counterparts**. This Agreement may be executed and delivered in two or more counterparts, each of which when so executed and delivered shall be the original, but such counterparts together shall constitute but one and the same instrument. An electronic signature (e.g., DocuSign), a copy, or facsimile signature (including a signature transmitted as a .tif or .pdf image) shall be sufficient to bind the signing Party.

In witness whereof the Parties have executed this Agreement on the date first stated above.

**GERALD GROUP LIMITED**

By: *(signed)*
Its:

**GERALD METALS SARL**

By: *(signed)*
Its:

**GERALD METALS, LLC**

By: *(signed)*
Its:

**MLS BERKOWITZ INVESMENTS, LLC**

By: *(signed)*
Its:

*(signed)*
Seth Berkowitz

**STRONG EMPIRE INTERNATIONAL
BUSINESS INTERMEDIATION, LLC**

By: *(signed)*
Its:

*(signed)*
Fernanda Alves de Souza

9