| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-2(c)**<br>**GENOVA BURNS, LLC**<br>110 Allen Road, Suite 304<br>Basking Ridge, New Jersey 07920<br>Tele: (973) 467-2700<br>Counsel for Gerald Metals Sarl, Creditor<br>DANIEL M. STOLZ, ESQ.<br>SCOTT S. REVER, ESQ.<br>GARY N. MARKS, ESQ.<br><br>**LOWENSTEIN SANDLER**<br>One Lowenstein Drive<br>Roseland, New Jersey 07068<br>Tele: (973) 597-2500<br>Counsel for Debtor<br>ANDREW BEHLMANN, ESQ.<br>COLLEEN M. RESTEL, ESQ. | |
| In Re:<br><br>**MLS BERKOWITZ INVESTMENTS, LLC,**<br><br>                                        Debtor. | Case No.: 23-15334 CMG<br><br>Chapter: 11<br><br>Judge: Christine M. Gravelle |

### JOINT CHAPTER 11 PLAN OF MLS BERKOWITZ INVESTMENTS, LLC FILED BY THE DEBTOR AND GERALD METALS SARL

MLS Berkowitz Investments, LLC and Gerald Metals Sarl, as Plan Proponents, respectfully submit this *Joint Chapter 11 Plan of MLS Berkowitz Investments, LLC* (the "Plan"), pursuant to Chapter 11, Title 11 of the United States Code, in the form annexed hereto and made a part hereof.

**MLS BERKOWITZ INVESTMENTS, LLC.**                    **GERALD METALS SARL**

By:   */s/ Seth Berkowitz*                    By:   */s/ Gary Lerner*
         (Authorized Signatory)                              (Authorized Signatory)

Dated:  August 21, 2023

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME .......................................................................................................................... 5

1.1.    Rules of Interpretation, Computation of Time, and Governing Law ........................... 5

1.2.    Defined Terms ............................................................................................................... 6

1.3.    Exhibits and Plan Supplement ..................................................................................... 13

1.4.    Deemed Acts ............................................................................................................... 13

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS ............................................. 13

2.1.    Introduction ................................................................................................................. 13

2.2.    Administrative Claims ................................................................................................. 14

2.3.    Priority Tax Claims ..................................................................................................... 14

2.4.    United States Trustee's Fees ....................................................................................... 15

ARTICLE III CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ........................................................................................................... 15

3.1.    Summary ...................................................................................................................... 15

3.2.    Classification and Treatment of Claims against the Debtor ........................................ 15

3.2.1.    *Class 1 – Priority Claims* ................................................................................... 16

3.2.2.    *Class 2 - General Unsecured Claims* ................................................................ 16

3.2.3.    *Class 3 – Subordinated Claims* ......................................................................... 16

3.2.4.    *Class 4 - Equity Interests* .................................................................................. 17

ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN .......................................... 17

4.1.    Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired. 17

4.2.    Voting Classes ............................................................................................................. 17

4.4.    Elimination of Vacant Classes .................................................................................... 17

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ...................................... 18

5.1.    Implementation of the Plan ......................................................................................... 18

5.2     Plan Funding. .............................................................................................................. 18

5.3.    Vesting of Property of Debtor in the Wind Down Estate ............................................ 18

5.4.    Appointment of Wind Down Trustee .......................................................................... 18

5.4.1.    General Powers, Rights and Responsibilities of Wind Down Trustee .................... 19

5.4.2.    Wind Down Trustee Agreement .......................................................................... 21

5.4.3.    Retention of Professionals ................................................................................... 21

5.4.6.    Conflicts of Interest ............................................................................................. 22

5.5.    Execution of Documents to Effectuate Plan ............................................................... 22

5.6.   Retention of Rights and Causes of Action....................................................22

5.7.   Authorization of Debtor's Action ...............................................................23

5.8.   Books and Records .....................................................................................23

5.10.   Abandoned Assets.....................................................................................23

5.11.   Continued Existence of Debtor Until Closing of the Case ......................24

5.12.   Wind Down and Closing Case .................................................................24

5.13.   No Agency Relationship...........................................................................24

ARTICLE VI PROVISIONS REGARDING DISTRIBUTIONS.............................25

6.1.   Manner of Payment under the Plan............................................................25

6.3.   Distribution Deadlines...............................................................................26

6.4.   Distributions Only on Business Days.........................................................26

6.5.    Rounding...................................................................................................26

6.6.   Withholding Taxes......................................................................................26

6.7.   Payment of Taxes on Distributions Received Pursuant to the Plan............26

ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
......................................................................................................................27

7.1.   Rejection of Executory Contracts and Unexpired Leases...........................27

7.2.   Claims Based on Rejection of Executory Contracts or Unexpired Leases..................27

ARTICLE VIII CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND TO
THE EFFECTIVE DATE ........................................................................................28

8.1.   Conditions to Confirmation of the Plan......................................................28

8.2.   Conditions to Effective Date ......................................................................28

8.3.   Effect of Failure of Conditions to Confirmation or the Effective Date.......................29

8.4.   Effective Date.............................................................................................29

ARTICLE IX INJUNCTIONS AND EXCLUPATION............................................29

9.1.   Term of Injunctions or Stays ......................................................................29

9.2   General Injunctions.......................................................................................29

9.3   Releases by the Wind Down Estate, Holders of Claims and Equity Interests. .............30

9.3.   Post-Confirmation Liability of Wind Down Trustee...................................31

9.4.   No Discharge...............................................................................................31

9.5.   Term of Injunctions or Stays. .....................................................................31

ARTICLE X RETENTION OF JURISDICTION.....................................................32

10.1.   Retention of Jurisdiction..........................................................................32

10.2.    Jurisdiction by Courts Other Than the Bankruptcy Court. ......................................33

ARTICLE XI MISCELLANEOUS ............................................................................................33

11.1.    Governing Law ..........................................................................................................33

11.2.    Payment of Statutory Fees ........................................................................................33

11.3.    Corporate Action .......................................................................................................34

11.4.    Mutual Non-Disparagement .....................................................................................34

11.5.    Modification and Revocation of Plan .......................................................................34

11.6.    Severability ...............................................................................................................34

11.7.    Exhibits .....................................................................................................................34

11.8.    Filing of Additional Documents ..............................................................................35

11.9.    Preservation of Rights Against Insurance ................................................................35

11.10.    Successors and Assigns ...........................................................................................35

11.11.    Reservation of Rights ..............................................................................................35

11.12.    Further Assurances ..................................................................................................35

11.13.    Section 1145 Exemption ..........................................................................................36

11.14.    Section 1146 Exemption ..........................................................................................36

11.15.    Determination of Tax Liability ................................................................................36

11.16.    Computation of Time Periods ..................................................................................36

11.17.    Record Date ..............................................................................................................36

11.18.    Binding Effect of Plan .............................................................................................37

11.19.    Substantial Consummation .......................................................................................37

11.20.    Confirmation Order and Plan Control ......................................................................37

11.21.    Waiver of Fourteen (14) Day Stay ...........................................................................37

11.22.    Notices ......................................................................................................................37

## INTRODUCTION

Pursuant to Chapter 11, Title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), MLS Berkowitz Investments, LLC (the "Debtor"), the debtor in possession in the above-captioned converted voluntary Chapter 11 Case (the "Chapter 11 Case") and Gerald Metals Sarl ("Gerald" and together with the Debtor, the "Plan Proponents"), hereby respectfully propose the accompanying Plan, including the exhibits hereto. As Gerald is the only known creditor of the Debtor and shall be voting in favor of this Plan, the Plan is deemed fully consensual. Further, the Plan does not require an accompanying disclosure statement, as Gerald, the only known creditor of the Debtor, is a Plan Proponent and received information prior to the filing of this Plan that Gerald stipulates is adequate, as that term is used in section 1125 of the Bankruptcy Code, to enable it to cast an informed vote on this Plan.

The Plan calls for the appointment of a Wind Down Trustee to pursue recovery of transfers to third parties, in accordance with the confidential *MLS Berkowitz Investments, LLC Memorandum of Understanding* (the "Memorandum of Understanding") filed under seal in this Chapter 11 Case. Subject to Article 11.20 below, the Memorandum of Understanding is hereby incorporated into and made a part of this Plan by reference.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

### *1.1.    Rules of Interpretation, Computation of Time, and Governing Law*

1.1.1. For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) any references to a Person as a Holder of a claim includes that Person's successors, assigns and affiliates; (e) wherever the Plan provides that a payment or Distribution shall occur "on" any date, it shall mean "on or as soon as reasonably practicable after" such date; (f) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (g) the words "herein," "hereof," "hereunder," and "hereto" and other similar terms refer to the Plan in its entirety rather than to a particular portion of the Plan; (h) references to part includes the whole, except where the context clearly requires otherwise; (i) "or" has the inclusive meaning represented by the phrase "and/or"; (j) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (k) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the construction hereof; and (l) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

1.1.2.   In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.1.3.   Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflict of laws thereof.

## 1.2.   *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan, or any subsequent amendments or modifications thereof:

1.       "Accounts Receivable" or "Receivables" means, collectively and individually, as applicable, all unpaid invoices for material, goods, equipment or services rendered, or expenses incurred, by the Debtor on behalf of its clients.

2.       "Administrative Claim" means a Claim for costs and expenses of administration under Section 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate; (b) the value of any goods received by the Debtor within 20 days before the Petition Date in which the goods were sold to the Debtor in the ordinary course of the Debtor's business; (c) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under Section 330(a) or 331 of the Bankruptcy Code; (d) all fees and charges assessed against the Estate under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to a Final Order of the Bankruptcy Court; (f) administrative claims that were timely filed prior to the Administrative Claims Bar Date and not objected to by the deadline set forth in this Plan for filing objections to Administrative Claims; and (g) any Tax Claims incurred by the Debtor after the Petition Date or relating to a tax year or period which occurs after the Petition Date.

3.       "Affiliate" shall have the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

4.       "Allowed" means with respect to a Claim or Equity Interest, a Claim or Equity Interest against the Debtor (i) proof of which was originally filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules, or (ii) a Claim or Equity Interest that is allowed by final order of the Bankruptcy Court, including by the Stipulation. For purposes hereof, an "Allowed Claim" shall include any Claim arising from the recovery of property under Sections 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code, any Claim allowed under or pursuant to the terms of the Plan, or any Claim that has been allowed by a Final Order, provided, however, that (i) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by order of the Bankruptcy Court, (ii) "Allowed Claim" shall

not include interest, penalties, or late charges arising from or relating to the period from and after the Petition Date unless specifically provided for in the Plan, (iii) "Allowed Claim" shall not include any Claim subject to disallowance in accordance with Section 502(d) of the Bankruptcy Code, and (iv) an "Allowed Claim" shall be net of any amounts previously paid, as well as any valid setoff or recoupment amount based on a valid setoff or recoupment right.

5.      "Assets" means (a) all property that is property of the Debtor and the Debtor's Estate under Section 541 of the Bankruptcy Code of every kind and character, whether such property is now existing or hereafter arising or acquired, wherever located and whether real, personal, tangible or intangible including, without limitation, all Cash, Accounts Receivable, and Sale Proceeds, Causes of Action, Insurance Policies and all proceeds of and recoveries on Causes of Action, tax refunds, all accounts, contract rights, chattel paper, general intangibles, goods, instruments, securities, furniture, fixtures, machinery, equipment, inventory intellectual property, domain names, interest in real estate, including, without limitation, all property and other interests identified in Section 541(a) of the Bankruptcy Code and (b) the proceeds, products, rents and/or profits of any of the foregoing.

6.      "Available Cash" means the aggregate amount of Cash held by the Debtor on the Effective Date.

7.      "Avoidance Action" means any Causes of Action to avoid or recover a transfer of property of the Estate or an interest of the Debtor in property, including, without limitation, actions arising under Sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable federal, state or common law.

8.      "Ballot" means the form distributed to the Holder of Impaired Claims on which it is to be indicated whether such Holder accepts or rejects the Plan in accordance with the Plan and the Voting Instructions.

9.       "Bankruptcy Code" means Title 11 of the United States Code.

10.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of New Jersey, which has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. §§ 157(a) and (b)(1) and the *Standing Order of Reference* of the United States District Court for the District of New Jersey dated September 18, 2012 (Simandle, C.J.).

11.      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case promulgated under 28 U.S.C. § 2075 and the Local Rules and General Orders of the Bankruptcy Court.

12.      "Books and Records" means any and all books and records, including computer-generated or computer-maintained books and record, as well as electronically-generated, stored, or maintained books and records, data or information, along with books and records of the Debtor maintained by or in the possession of third parties, wherever located.

7

13.  "Business Day" means any day, other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

14.  "Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and legal tender of the United States of America or instrumentalities thereof.

15.  "Causes of Action" means all of the Debtor's and the Estate's causes of action, Claims, choses in action, liabilities, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including, but not limited to, the Avoidance Actions; all other Claims in avoidance, recovery, and/or subordination; causes of action against any current or former officer, director, partner or member of the Debtor, and any and all other potential causes of action, whether described in the Memorandum of Understanding, the Plan or any Plan Supplement, whether asserted or assertible directly or derivatively, in contract or in tort, in law, equity or otherwise and whether asserted or unasserted as of the Effective Date, *provided, however*, for the avoidance of doubt, that Causes of Action do not include any Claims or causes of action released pursuant to the Plan and the Memorandum of Understanding.

16.  "Chapter 11 Case" means the Debtor's bankruptcy case under chapter 11 of the Bankruptcy Code pending in the District of New Jersey Bankruptcy Court, Case No. 23-15334-CMG.

17.  "Claim" has the meaning given thereto in Section 101(5) of the Bankruptcy Code.

18.  "Claimant" means the Holder of a Claim against the Debtor.

19.  "Class A Membership Unit" means a unit of membership in the Wind Down Debtor.  The initial Class A Membership Unit will be held by the Wind Down Trustee in trust for the benefit of the Estate.  The Class A Membership Unit held by the Wind Down Trustee shall be deemed canceled once the Gerald Claim has been paid in full.

20.  "Class B Membership Unit" means a single, non-voting unit of membership in the Wind Down Debtor.  The Class B Membership Unit shall (a) entitle the holder thereof to distributions of net Wind Down Assets only after the Gerald Claim has been paid in full and (b) convert to a Class A Membership Unit once the Gerald Claim has been paid in full.

21.  "Confirmation" means the entry of the Confirmation Order, subject to the conditions specified in Article 8.1 of the Plan.

22.    "Confirmation Date" means the date of entry of the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

23.    "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code to consider Confirmation of the Plan in accordance with Section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

24.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, as the Plan may be amended by its terms and consistent with applicable law, which shall be in form and substance acceptable to the Plan Proponents, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

25.    "Consummation" or "Consummate" means the occurrence of the Effective Date.

26.    "Debt" means liability on a Claim.

27.    "Debtor" or "Debtor in Possession" means MLS Berkowitz Investments, LLC, as debtor and debtor in possession in this Chapter 11 Case, pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

28.    "Distribution" means any distribution made pursuant to the terms of the Plan.

29.    "Distribution Date" means any date on which a Distribution is made to Holders of Allowed Claims or Equity Interests under the Plan.

30.    "Effective Date" means the first Business Day following the Confirmation Date on which all conditions to consummation of the Plan have been (i) satisfied or (ii) waived as provided in Article 8.2 hereof.

31.    "Entity" has the meaning given thereto in Section 101(15) of the Bankruptcy Code.

32.    "Equity Interest" means any equity interest or proxy related thereto, direct or indirect, in the Debtor, and represented by duly authorized, validly issued and outstanding membership interests or any other instrument evidencing a present ownership interest, direct or indirect, inchoate or otherwise, in the Debtor, or right to convert into such an equity interest or acquire any equity interest of the Debtor, whether or not transferable, or an option, warrant, or right, contractual or otherwise, to acquire any such interest, which was in existence prior to the Petition Date.

33.    "Estate" means the estate of the Debtor in this Chapter 11 Case created pursuant to Section 541 of the Bankruptcy Code upon the commencement of this Chapter 11 Case.

34.    "Executory Contract" means any executory contract or unexpired lease subject to Section 365 of the Bankruptcy Code between the Debtor and any other Entity.

35.    "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

36.    "Final Distribution Date" means the date of the last payment to Holders of Allowed Claims or Equity Interests in accordance with the provisions of the Plan.

37.    "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) which has not been reversed, stayed, modified or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending; provided, however, if an appeal, or writ of certiorari, reargument or rehearing thereof has been filed or sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, further, that the possibility that a motion under Section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such order, shall not cause such order not to be a Final Order.

38.    "General Unsecured Claims" means any Claim which is not (i) subject to a perfected security interest, (ii) an Administrative Claim, or (iii) a Priority Claim.

39.    "Gerald" shall mean Gerald Metals Sarl.

40.    "Gerald Claim" means a single allowed General Unsecured Claim held by Gerald in the aggregate amount of $60,000,000.

41.    "Holder" means an Entity holding a Claim or Equity Interest.

42.    "Impaired" means, when used in reference to a Claim or Equity Interest or a class thereof, a Claim or Equity Interest or class thereof that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

43.    "Insider" means an insider of any Debtor, as defined in Section 101(31) of the Bankruptcy Code.

44.    "Insider Claims" means any and all Claims held by any Insider.  All Insider Claims shall be treated as Subordinated Claims.

45.    "<u>Insurance Policies</u>" means any policy of insurance and any agreements relating thereto that may be available to provide coverage for Claims against the Debtor, its Employees, or Affiliates.

46.    "<u>Litigation</u>" means the interest of the Estate or the Wind Down Estate, as applicable, in any Causes of Action that have been or may be commenced by the Debtor or the Wind Down Trustee.

47.    "<u>Litigation Recoveries</u>" means any Cash or other property received by the Debtor or the Wind Down Trustee, as applicable, from all or any portion of the Litigation, including, but not limited to, awards of damages, attorneys' fees and expenses, interest and punitive damages, whether recovered by way of settlement, execution on judgment or otherwise. If any Litigation is pursued on a contingent fee basis, the Litigation Recovery will be net of any fees of legal counsel and related expenses.

48.    "<u>Longwood Interest</u>" means the Debtor's membership interest in Longwood Industrial LLC.

49.    "<u>Lowenstein Claim</u>" means an Allowed Administrative Claim in the amount of $100,000 held by Lowenstein Sandler LLP pursuant to the Memorandum of Understanding and the Stipulation, which shall be paid from the first proceeds of, and at the closing of, the sale of the Longwood Interest pursuant to the Memorandum of Understanding without prejudice to payment in full by Seth Berkowitz or his Affiliates (other than the Debtor) of all other fees due to Lowenstein Sandler LLP in connection with this Chapter 11 Case, the predecessor involuntary chapter 7 bankruptcy case, or otherwise.

50.    "<u>Memorandum of Understanding</u>" has the meaning given thereto in the preamble.

51.    "<u>Petition Date</u>" means June 20, 2023.

52.    "<u>Plan</u>" means this *Joint Chapter 11 Plan of MLS Berkowitz Investments, LLC*, including, without limitation, any exhibits and supplements hereto, either in their present forms or as it may be altered, amended, modified or supplemented from time to time in accordance with the Plan, the Bankruptcy Code and the Bankruptcy Rules.

53.    "<u>Priority Claim</u>" means any claim entitled to priority pursuant to the provisions of the Bankruptcy Code that is not a Priority Tax Claim.

54.    "<u>Priority Tax Claim</u>" means any tax claim entitled to priority pursuant to the provisions of the Bankruptcy Code.

55.    "<u>Related Person</u>" shall have the definition set forth in the Memorandum of Understanding.

11

56.     "Released Entities" shall have the definition set forth in the Memorandum of Understanding.

57.     "Released Parties" shall have the definition set forth in the Memorandum of Understanding.

58.     "Stipulation" means the *Stipulated Order (I) Approving Stipulation and Consent Order By and Between MLS Berkowitz Investments, LLC and Gerald Metals Sarl and (II) Converting Involuntary Chapter 7 Case to Chapter 11*.

59.     "Subordinated Claim" shall mean any Claim that is subordinated under applicable law, agreement of the parties or pursuant to a Final Order of the Bankruptcy Court, including but not limited to Subordinated Insider Claims.

60.     "Subordinated Insider Claim" shall mean any Claim of an Insider.

61.     "Unimpaired" means, when used in reference to a Claim or Equity Interest or a class thereof, a Claim or Equity Interest or class thereof that is unimpaired within the meaning of Section 1124 of the Bankruptcy Code.

62.     "U.S. Trustee" means, the Office of the United States Trustee for Region 3.

63.     "U.S. Trustee Fees" means all fees and charges assessed against the Estate under § 1930 of Title 28 of the United States Code, and interest, if any, for delinquent quarterly fees pursuant to § 3717 of Title 31 of the United States Code.

64.     "Wind Down" means the wind down of the Debtor's Estate following the Effective Date.

65.     "Wind Down Assets" means all of the Debtor's assets, which shall vest in the Wind Down Debtor not earlier than one business day before such assets are to be distributed to Allowed Claims pursuant to this Plan and the Confirmation Order and as is set forth further in the Wind Down Trustee Agreement.

66.     "Wind Down Debtor" means the Debtor or any successor thereto by merger, consolidation, or otherwise, in the form of a corporation, limited liability company, partnership or other form, as the case may be, on or after the Effective Date to, among other things, effectuate the Wind Down, commence litigation, settle Causes of Action that are not released, waived, settled, compromised or transferred under the Plan and make distributions pursuant to the terms of the Plan and the Wind Down Trustee Agreement.

67.     "Wind Down Expenses" means all actual and necessary costs and expenses incurred by the Wind Down Trustee or Wind Down Debtor, as applicable, in connection with carrying out the obligations of the Wind Down Debtor and Wind Down Trustee pursuant to the terms of the Plan and Wind Down Trustee Agreement.

68.     "<u>Wind Down Estate</u>" means the Estate following the Effective Date of the Plan.

69.     "<u>Wind Down Trustee</u>" means the person selected by Gerald to administer the Wind Down.  All costs, liabilities, and expenses reasonably incurred by the Wind Down Trustee and any personnel or professionals employed by the Wind Down Trustee in the performance of the Wind Down Trustee's duties shall be paid from the Wind Down Debtor's Assets.

70.     "<u>Wind Down Trustee Agreement</u>" means that certain agreement by and among the Debtor, the Wind Down Trustee, and the Wind Down Debtor, which is annexed to the Plan Supplement as **<u>Exhibit A</u>**.

### 1.3.    *Exhibits and Plan Supplement*

All Exhibits, as well as any Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits and Plan Supplements shall be timely filed in accordance with the Plan.  To the extent that any exhibit or Plan Supplement is inconsistent with the terms of the Plan, the Plan shall control. Holders of Claims and Equity Interests may obtain a copy of the filed Exhibits and Plan Supplement upon written request to the Plan Proponents.  Upon their filing, the Exhibits and any Plan Supplement may be inspected upon written request (electronic or otherwise) jointly upon counsel for the Debtor (c/o Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, New Jersey, 07068, Attention: Andrew Behlmann, Esq. and Colleen Restel, Esq. (E-mail: abehlmann@lowenstein.com, crestel@lowenstein.com)), and counsel for Gerald (c/o Genova Burns LLC., 110 Allen Rd., Basking Ridge, New Jersey 07920, Attention: Daniel M. Stolz, Esq. (E-mail: dstolz@genovaburns.com)).  The documents contained in the Exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

### 1.4.    *Deemed Acts*

Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed as a matter of law to have been done or to have occurred, without any further act by any Entity, by virtue of the Plan and the Confirmation Order.

### ARTICLE II
### TREATMENT OF UNCLASSIFIED CLAIMS

### 2.1.    *Introduction*

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and the Holders of such Claims do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. All such Claims, as well as U.S. Trustee Fees, are instead treated separately upon the terms set forth in Article II.

### 2.2.    *Administrative Claims*

(a)    *Administrative Claims Bar Date*. Except as provided below for U.S. Trustee Fees, requests for payment of Administrative Claims must be filed no later than thirty (30) days after the Debtor serves notice of occurrence of the Effective Date. Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such requests by the Administrative Claims Bar Date shall be forever barred from asserting such Claims against the Debtor or its property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim. For the avoidance of doubt, counsel to the Debtor is not required to file a Professional Fee Claim, but instead is deemed by the Stipulation, the Memorandum of Understanding, and the Plan to hold the Lowenstein Claim, which is deemed Allowed and shall be paid as set forth in the Memorandum of Understanding.

(b)    *Treatment*. Subject to the Administrative Claims Bar Date, the Memorandum of Understanding and other provisions herein, unless the Holder of an Allowed Administrative Claim agrees to different or less favorable treatment, each Holder of an Allowed Administrative Claim, will receive, from the Estate's assets, without interest, Cash equal to the Allowed amount of such Claim, in full and final satisfaction of its Administrative Claim, at the sole option of the Wind Down Trustee: (a) upon the later of (i) the Effective Date or (ii) thirty (30) days after the date on which such Allowed Administrative Expense Claim becomes an Allowed Claim; (b) in accordance with the terms and conditions of agreements between the Holders of such Claims and the Debtor or the Wind Down Trustee, as the case may be; and (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtor's business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtor's business or as otherwise provided in the Plan.

Notwithstanding any provision in the Plan regarding payment of Administrative Claims to the contrary, and without waiver of any argument available that such Claim is already time-barred by prior orders of the Bankruptcy Court, all Administrative Claims that are required to be Filed and not Filed by the Administrative Claim Bar Date shall be deemed disallowed and discharged. As provided herein, the Wind Down Trustee shall preserve Wind Down Assets sufficient to cover the aggregate asserted amount of all disputed Administrative Claims. Without limiting the foregoing, all fees payable under 28 U.S.C. § 1930 that have not been paid, shall be paid on or before the Effective Date.

The Lowenstein Claim shall be payable solely from the first proceeds of, and shall be payable at the closing of, the sale of the Longwood Interest and shall not be payable from other assets of the Wind Down Estate.

### 2.3.    *Priority Tax Claims*

On the later to occur of (i) the Effective Date or (ii) the date on which such Claim shall become an Allowed Claim, and (iii) payment in full of Administrative Claims and Wind Down Expenses, the Wind Down Trustee shall pay to each Holder of an Allowed Priority Tax Claim

from the Wind Down Assets, the Allowed amount of such Allowed Priority Tax Claim without interest from Petition Date.

### 2.4.    *United States Trustee's Fees*

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtor or the Wind Down Trustee on or before the Effective Date.   Thereafter, the Wind Down Trustee shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a final decree or an order converting or dismissing the case.

# ARTICLE III
# CLASSIFICATION AND TREATMENT OF CLASSIFIED
# CLAIMS AND EQUITY INTERESTS

### 3.1.    *Summary*

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is Impaired or Unimpaired. The Plan provides the treatment each class will receive under the Plan.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation and distribution pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

### 3.2.    *Classification and Treatment of Claims against the Debtor*

The classification of Claims and Equity Interests against the Debtor pursuant to the Plan, is as follows:

| Summary of Classification and Treatment of Classified Claims and Equity Interests | | | |
|---|---|---|---|
| Class | Claim | Status | Voting Rights |
| 1 | Priority Claims | Unimpaired | Deemed to Accept |
| 2 | General Unsecured Claims | Impaired | Entitled to Vote |
| 3 | Subordinated Claims | Impaired | Stipulated to Accept |
| 4 | Equity Interests | Impaired | Stipulated to Accept |

### 3.2.1. *Class 1 – Priority Claims*

(a)    *Classification*: Class 1 consists of the Priority Claims against the Debtor.

(b)    *Treatment*: All Creditors holding Allowed Class 1 Claims shall be paid in full as soon as practicable following the later of: (a) the Effective Date, (b) the date such Class 1 Priority Claim becomes an Allowed Claim (or as otherwise permitted by law), and (c) the payment in full of all Allowed Administrative Claims and Priority Tax Claims. The Wind Down Trustee shall pay each Entity holding a Class 1 Priority Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; provided, however, that such individual or Entity may be treated on such less favorable terms as may be agreed to in writing by such Entity.

(c)    *Voting*: Class 1 is Unimpaired and Holders of Class 1 are deemed to have accepted this Plan and shall not have a right to vote to accept or reject the Plan.

### 3.2.2. *Class 2 - General Unsecured Claims*

(a)    *Classification*: Class 2 consists of the Claims of Holders of General Unsecured Claims. The Debtor has stipulated and represented that Gerald is the only party holding a General Unsecured Claim against the within Bankruptcy Estate pursuant to the Memorandum of Understanding. The Released Parties and the Released Entities have waived the right to assert any Claims against the within Bankruptcy Estate.

(b)    *Treatment*: Each Holder of an Allowed General Unsecured Claim shall receive a Pro Rata share of the Wind Down Assets following the payment in full of all Allowed Administrative, Priority Tax Claims, Class 1 Claims, and Wind Down Expenses.

Class 2 General Unsecured Claims are subject to all statutory, equitable and contractual subordination claims, rights and grounds available to the Debtor, the Estate and, pursuant to the Plan, the Wind Down Trustee, which subordination claims, rights and grounds are fully enforceable prior to, on and after the Effective Date.

(c)    *Voting*: Class 2 is Impaired and Holders of Class 2 Claims are entitled to vote to accept or reject the Plan. Gerald, the only holder of a Class 2 General Unsecured Claim, has agreed to support the Plan pursuant to the Memorandum of Understanding and, through the Stipulation, has stipulated that it accepts this Plan.

### 3.2.3. *Class 3 – Subordinated Claims*

(a)    *Classification*: Class 3 consists of all Subordinated Claims. Allied Salt LLC asserts that it holds an Allowed Subordinated Claim in the amount of $659,000.

(b)      *Treatment*:  The Holder of the Allowed Subordinated Claim has agreed to waive the right to any distribution on account of such Claim in exchange for the releases and other consideration it is receiving under this Plan and the MOU.

### 3.2.4. *Class 4 - Equity Interests*

(a)      *Classification*: Class 4 consists of all Equity Interests in the Debtor.

(b)      *Treatment*: Holders of Class 4 Equity Interests have agreed to support the Plan pursuant to the Memorandum of Understanding.  Seth Berkowitz, as Holder of the Class 4 Equity Interest, shall receive the Class B Membership Interest in exchange for his Equity Interests in the Debtor.  Holders of Equity Interests are not required to vote on the Plan.

## ARTICLE IV
## ACCEPTANCE OR REJECTION OF THE PLAN

### 4.1.    *Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired.*

In the event the designation of the treatment of a Class as impaired or unimpaired is objected to, the Bankruptcy Court shall determine the objection and voting shall be permitted or disregarded in accordance with the determination of the Bankruptcy Court.

### 4.2.    *Voting Classes*

Each Holder of an Allowed Claim in Class 2 is entitled to vote either to accept or to reject the Plan. Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation. The Order shall govern the manner and procedures for casting of Ballots with the Voting Agent.

### 4.3    *Presumed Acceptances by Subordinated Claim Holders and Equity Interests.*

The Holders of all Claims in Classes 3 and 4 have stipulated that they accept the Plan, and therefore are deemed to have voted in favor of the Plan.

### 4.4.    *Elimination of Vacant Classes.*

Any Class of Claims or Equity Interests that does not have a Holder of an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Section 1129(a)(8) of the Bankruptcy Code.

17

## ARTICLE V
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 5.1.    *Implementation of the Plan*

The Plan will be implemented by the Wind Down Trustee in a manner consistent with the terms and conditions set forth in the Plan, the Confirmation Order and the Wind Down Trustee Agreement. On and after the Effective Date, except as otherwise provided in the Plan, the Wind Down Trustee may use, sell, assign, transfer or otherwise acquire or dispose of property and compromise or settle any Claims, Equity Interests or Causes of Action without approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan, the Confirmation Order, and the Memorandum of Understanding.

### 5.2    *Plan Funding.*

The funds utilized to make Cash payments under the Plan will be generated from, among other things, the Cash on Hand, proceeds from sales of assets of the Debtor (except as set forth in the Memorandum of Understanding), recoveries on Accounts Receivable and Litigation Recoveries.

### 5.3.    *Vesting of Property of Debtor in the Wind Down Estate*

Upon the Effective Date, title to all property of the Estate of the Debtor in the Bankruptcy Case shall vest in the Wind Down Estate and shall be retained by the Wind Down Estate for the purposes contemplated under the Plan and shall be administered by the Wind Down Trustee. Without limiting the generality of the foregoing, all Litigation Recoveries, rights to Liquidation Proceeds, and all resulting Wind Down Assets earmarked for distribution to Holders of Allowed Claims under the Plan, shall vest in the Wind Down Estate upon the Effective Date.

### 5.4.    *Appointment of Wind Down Trustee*

The Confirmation Order shall provide for the appointment of the Wind Down Trustee, who shall be selected by Gerald in its sole discretion, subject to the approval of the Bankruptcy Court pursuant to the Confirmation Order.  Gerald shall file a Notice on the docket in the Bankruptcy Case by no later than three (3) days prior to the Confirmation Hearing disclosing the identity of the Wind Down Trustee.  The Wind Down Trustee shall be the "representative of the estate," as that phrase is used in Section 1123(b)(3)(B) of the Bankruptcy Code, and shall have all powers, authority and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code.  The Wind Down Trustee shall exclusively enforce and liquidate any and all such Claims, rights, or Causes of Action, as appropriate, in accordance with the best interests of the Debtor and the Holders of Allowed Claims and with the Memorandum of Understanding, including any and all Causes of Action that were or could have been commenced by the Debtor or the Estate prior to the Effective Date and shall be

deemed substituted for the same as the party in such action. All Causes of Action Claims, rights or interests of the Estate are preserved and retained and may be enforced by the Wind Down Trustee as the representative of the Debtor and/or the Estate pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code. The Wind Down Trustee shall be a party-in-interest as to all matters over which the Bankruptcy Court has jurisdiction and shall be the only party to have standing to file, prosecute, settle, or compromise all Assets of the Wind Down Estate, including all Causes of Action and Claims. After the Effective Date, the Wind Down Trustee shall have the sole authority to review, object to and settle Claims. The Wind Down Trustee shall also have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and Causes of Action without the consent or approval of any third party and without any further order of the Bankruptcy Court or any other court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan, the Confirmation Order, and the Memorandum of Understanding.

### 5.4.1. *General Powers, Rights and Responsibilities of Wind Down Trustee*

The Wind Down Trustee will act for the Wind Down Debtor in the same fiduciary capacity as applicable to a board of directors of a Delaware corporation, subject to the provisions of the Plan and the Wind Down Trustee Agreement. On the Effective Date, the Wind Down Trustee shall succeed to and have the sole authority to all of the rights of the Debtor with respect to the Wind Down Assets, including prosecuting Causes of Action and reviewing and objecting to Claims, if appropriate, necessary to protect, conserve, and liquidate all Wind Down Assets as quickly as reasonably practicable, including, without limitation, control over (including the right to waive) all attorney-client privileges, work-product privileges, accountant-client privileges and any other evidentiary privileges relating to the Wind Down Assets that, prior to the Effective Date, belonged to the Debtor pursuant to applicable law.

The powers, rights, and responsibilities of the Wind Down Trustee are set forth in the Wind Down Trustee Agreement and shall include, but not be limited to, the following:

(a)    to invest Cash in accordance with Section 345 of the Bankruptcy Code, and withdraw and make distributions of Cash to Holders of Allowed Claims and pay taxes and other obligations owed by the Debtor or incurred by the Wind Down Trustee in connection with the wind-down of the Wind Down Estate in accordance with the Plan;

(b)    to receive, manage, invest, supervise, and protect the Wind Down Assets, including paying taxes or other obligations incurred in connection with administering the Wind Down Assets;

(c)    to engage attorneys, consultants, agents, employees and all professional persons, to assist the Wind Down Trustee with respect to the Wind Down Trustee's responsibilities;

(d)     to pay the fees and expenses for the attorneys, consultants, agents, employees and professional persons engaged by the Wind Down Trustee and to pay all other expenses in connection with administering the Plan and for winding down the affairs of the Wind Down Debtor in each case in accordance with the Plan;

(e)     to execute and deliver all documents, and take all actions, necessary to consummate the Plan and liquidate the Wind Down Assets;

(f)     to dispose of, and deliver title to others of, or otherwise realize the value of, all the remaining Wind Down Assets;

(g)     to coordinate the collection of any Accounts Receivable;

(h)     to coordinate the storage and maintenance of the Wind Down Debtor's Books and Records;

(i)     to oversee compliance with the Wind Down Debtor's accounting, finance and reporting obligations;

(j)     to prepare monthly operating reports and financial statements and U.S. Trustee quarterly reports until such time as a final decree has been entered;

(k)     to oversee the filing of final tax returns, audits and other dissolution documents, if required;

(l)     to perform any additional corporate actions as necessary to carry out the wind-down, liquidation and ultimate dissolution of the Wind Down Debtor;

(m)     except as otherwise provided herein, to object to Claims filed against the Debtor in this Chapter 11 Case;

(n)     except as otherwise provided herein, to compromise and settle Claims against the Debtor;

(o)     except as otherwise provided herein, to act on behalf of the Wind Down Debtor in all adversary proceedings and contested matters (including, without limitation, any Causes of Action), then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, or dispute any adversary proceedings or contested matters (including, without limitation, any Causes of Action) and otherwise pursue actions involving Wind Down Assets that could arise or be asserted at any time under the Bankruptcy Code or otherwise, unless otherwise specifically waived or relinquished in the Plan;

(p)     to implement and/or enforce all provisions of the Plan; and

(q)    to use such other powers as may be vested in or assumed by the Wind Down Trustee pursuant to the Plan or order of the Bankruptcy Court or as may be necessary and proper to carry out the provisions of the Plan.

### 5.4.2.    *Wind Down Trustee Agreement.*

On the Effective Date, the Wind Down Trustee Agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms and provisions. The Wind Down Trustee Agreement is hereby incorporated into the Plan in all respects. After the Effective Date, the Wind Down Trustee Agreement may be amended in accordance with its terms.  However, material amendments shall be subject to the approval of the Bankruptcy Court.  The Wind Down Trustee Agreement shall be substantially in the form attached to the Plan Supplement as **Exhibit A**.

### 5.4.3.    *Retention of Professionals*

The Wind Down Trustee may retain professionals of his choosing (including professionals previously employed by Gerald or the Debtor) and pay such professionals in the ordinary course for services rendered following the Effective Date without order of the Bankruptcy Court, subject to the provisions of Article 5.4.1 of the Plan.  Such post-Effective Date professionals shall provide the Wind Down Trustee with monthly, detailed invoices in respect of their services and expenses, which may be paid by the Wind Down Trustee without Bankruptcy Court approval subject to the procedures set forth in the Wind Down Trustee Agreement and Article 5.4.1 of the Plan. Notwithstanding the foregoing, if the Wind Down Trustee objects in writing to the payment of any compensation, such disputed amount shall not be paid prior to the earlier of the resolution of such dispute or a ruling by the Bankruptcy Court.  The Wind Down Trustee shall file notices with the Bankruptcy Court every six (6) months reflecting payments professionals.

### 5.4.4.    *Compensation of the Wind Down Trustee*

The Wind Down Trustee shall be compensated for his services in accordance with the Wind Down Trustee Agreement.

### 5.4.5.    *Insurance*

The Wind Down Trustee shall be authorized to obtain all reasonably necessary insurance coverage for itself, its agents, representatives, employees, or independent contractors, including, but not limited to, coverage with respect to the liabilities, duties, and obligations of the Wind Down Trustee and its agents, representatives, employees, or independent contractors under the Wind Down Trustee Agreement (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may, at the sole option of the Wind Down Trustee, remain in effect for a reasonable period.

### 5.4.6.  *Conflicts of Interest*

Should the Wind Down Trustee perceive or any party in interest assert that the Wind Down Trustee holds a conflict of interest with regard to the performance of any aspect of his duties under the Wind Down Trustee Agreement, the issue shall first be brought to the attention of the United States Trustee and thereafter brought before the Bankruptcy Court for resolution.

### 5.5.    *Execution of Documents to Effectuate Plan*

Prior to the Confirmation Date, the Debtor shall execute any instruments or documents that are necessary to effectuate the provisions of the Plan.  In the event that any party fails or refuses to execute or deliver such instruments or documents, the Wind Down Trustee, after the Effective Date, shall be authorized to execute such instruments or documents on any parties' behalf.  From and after the Confirmation Date, the Wind Down Trustee shall have the exclusive power and authority to execute any instrument or document to effectuate the provisions of the Plan.

### 5.6.    *Retention of Rights and Causes of Action.*

Except as provided in the Memorandum of Understanding, all present and future rights, claims, or Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor holds on behalf of the Estate or of the Debtor in accordance with any provision of, among other things, the Bankruptcy Code, including Sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code, or any applicable nonbankruptcy law against any Person that have not been released or sold on or prior to the Effective Date.  For the avoidance of doubt, Causes of Action that have been released pursuant to this Plan and the Memorandum of Understanding are not Wind Down Assets.  On the Effective Date, pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Wind Down Trustee shall have possession and control of, and shall retain and have the right to enforce, pursue, litigate and compromise any and all present or future rights, claims, or Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses against any Entity and with respect to any rights of the Debtor, except as set forth in this Plan or the Memorandum of Understanding.  The Wind Down Trustee has, retains, reserves and shall be entitled to assert and pursue such claims, Causes of Action, rights of setoff, or other legal or equitable defenses, and all legal and equitable rights of the Debtor not expressly released under the Plan, after the Effective Date. Any Distribution provided for in the Plan and the allowance of any Claim for the purpose of voting on the Plan is and shall be without prejudice to the rights of the Wind Down Trustee to pursue and prosecute any such actions. Except as otherwise set forth in the Plan, all Causes of Action of the Debtor shall survive Confirmation of the Plan and shall be transferred to the Wind Down Estate, and the commencement and prosecution of Causes of Action of the Debtor shall not be barred or limited by res judicata or any estoppel, whether judicial, equitable or otherwise.

### 5.7.    *Authorization of Debtor's Action*

Entry of the Confirmation Order shall authorize the Wind Down Trustee to take, or cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of the Plan. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation, limited liability, or partnership law of the state in which the Debtor is chartered, organized or incorporated, without any requirement of further action by the members of the Debtor.

### 5.8.    *Books and Records*

On the Effective Date, the Debtor shall cooperate and cause any and all of its Books and Records, in any form, including all electronic records, to be transferred to the Wind Down Estate, and Wind Down Trustee shall be deemed the owner of such Books and Records on behalf of the Wind Down Estate. Except as otherwise provided, the Wind Down Trustee shall be permitted, in his discretion, to abandon, destroy, or otherwise dispose of those Books and Records in compliance with applicable non-bankruptcy law, provided, however, that, in the Wind Down Trustee's discretion, these Books and Records may be destroyed or disposed of beginning two (2) years after the Effective Date notwithstanding any applicable laws, rules, or regulations that would have required the Debtor to retain such Books and Records. Further, the Wind Down Trustee shall preserve and maintain all documents, data and information responsive to any subpoena, litigation hold, or discovery request to which the Debtor is subject on or after the Effective Date, provided that the Wind Down Trustee was served with a subpoena or discovery request before the time period to destroy records. The Wind Down Trustee shall file notices with the Bankruptcy Court reflecting any abandonment of Books and Records prior to two (2) years from the Effective Date.

### 5.9.    *Privileges of the Debtor*

All privileges of the Debtor shall revest in the Wind Down Estate without waiver or release. The Wind Down Trustee shall be the beneficiary of such privileges and be entitled to assert or waive all privileges.

### 5.10.    *Abandoned Assets*

Upon the appointment of the Wind Down Trustee, and subject to a notice being filed with the Bankruptcy Court, the Wind Down Trustee may abandon any Wind Down Assets, and upon such abandonment, such Wind Down Assets shall cease to be Wind Down Assets.

### 5.11.    *Continued Existence of Debtor Until Closing of the Case*

Except as expressly provided otherwise in the Plan and subject to the powers, duties and authority of the Wind Down Trustee, from and after the Effective Date, the Wind Down Debtor shall continue in existence for the purposes of, among other things, (i) winding up its affairs as expeditiously as reasonably possible, (ii) liquidating, by conversion to Cash or other methods, of any remaining Wind Down Assets, including, without limitation, the Causes of Action, and payment refunds, as expeditiously as reasonably possible, (iii) prosecuting Causes of Action, interests, rights and privileges of the Debtor, (iv) resolving disputed claims, (v) administering the Plan, (vi) filing appropriate tax returns and (vii) performing all such other acts and conditions required by and consistent with consummation of the terms of the Plan and the wind down of its affairs, and shall thereafter be dissolved at the discretion of the Wind Down Trustee.  No later than upon the entry of an order closing this Chapter 11 Case, the Debtor shall be deemed dissolved for all purposes and the Wind Down Trustee shall file a certificate of dissolution with the appropriate state agencies.

### 5.12.    *Wind Down and Closing Case*

Once (a) the Plan has been fully administered, (b) all disputed claims have been resolved, (c) all Causes of Action have been resolved, and (d) all Wind Down Assets have been reduced to Cash or abandoned, the Wind Down Trustee shall effect a final distribution of all Wind Down Assets (after reserving sufficient Cash to pay all unpaid expenses of administration of the Plan and all expenses reasonably expected to be incurred in connection with the final distribution) to Holders of Allowed Claims in accordance with the Plan.

After the Wind Down Estate has been fully administered, the Wind Down Trustee shall file the final account and report with the Bankruptcy Court. At such time, the Wind Down Trustee shall move for the Bankruptcy Court to enter a Final Decree closing the Chapter 11 Case pursuant to Section 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

### 5.13.    *No Agency Relationship*

The Wind Down Trustee shall not be deemed to be the agent for any of the Holders of Claims in connection with the funds held or distributed pursuant to the Plan. The Wind Down Trustee shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence, willful misconduct or fraud. The Wind Down Trustee shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Wind Down Estate against any and all claims arising out of his or her duties under the Plan, except to the extent his or her actions constitute gross negligence, willful misconduct or fraud. The Wind Down Trustee may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he or she believes to be genuine and to have been signed or presented by the proper party or parties. The Wind Down

Trustee may rely upon information previously generated by the Debtor and such additional information provided to him or her by former employees of the Debtor.

## ARTICLE VI
## PROVISIONS REGARDING DISTRIBUTIONS

### 6.1.    *Manner of Payment under the Plan*

At the option of the Wind Down Trustee, any Cash payment to be made hereunder may be made in U.S. dollars by a check drawn on a domestic bank selected by the Wind Down Trustee in accordance with the Plan or by wire transfer from a domestic bank or as otherwise required or provided in applicable agreements. The Wind Down Trustee may use the services of a third party to aid in the Distributions required to be made under the Plan. All Distributions under the Plan on account of any Allowed Claims shall be made by regular, first-class mail, postage prepaid in an envelope at: (i) the address of the Holder of such Allowed Claim as set forth in a filed Proof of Claim or (ii) such other address as such Holder shall have specified for payment purposes in a written notice to the Wind Down Trustee at least fifteen (15) days prior to such Distribution Date. Subject to section 5.10 herein, the Wind Down Trustee shall make a good faith effort to ascertain an alternative address and will re-mail any undelivered Distributions or notices that were returned marked "undeliverable" or "moved - no forwarding address" or for a similar reason. The date of payment or delivery shall be deemed to be the date of mailing. Cash payments made pursuant to the Plan in the form of checks issued by the Wind Down Trustee shall be null and void if not cashed within 120 days of the date of the issuance thereof. Requests for reissuance of any check shall be made directly to the Wind Down Trustee.

### 6.2.    *Timing of Distributions*

Except as otherwise agreed by the Holder of a particular Claim, or as provided in the Plan, all amounts to be paid by the Wind Down Trustee under the Plan shall be distributed in such amounts and at such times as is reasonably prudent. On the Effective Date, or as soon as practicable thereafter, subject to the Plan , the Wind Down Trustee shall: (i) marshal, manage and liquidate all then available Wind Down Assets; (ii) promptly pay the Holders of (a) Allowed Administrative Claims, (b) Allowed Priority Tax Claims and (c) the Holders of Allowed Claims as provided for under the Plan; (iii) make distributions of Wind Down Assets to the Holders of Allowed Claims in the amounts and according to the priorities set forth in the Plan. Notwithstanding any provision to the contrary in the Plan, distributions may be made in full or on a Pro Rata basis depending on: (x) the amount of the Allowed Claim, (y) the then available Wind Down Assets, and (z) the then anticipated Wind Down Assets. The Wind Down Trustee shall make the Cash payments to the Holders of Allowed Claims: (aa) in U.S. dollars by check, draft or warrant, drawn on a domestic bank selected by the Wind Down Trustee in his sole discretion, or by wire transfer from a domestic bank, at the Wind Down Trustee's option, and (bb) by first-class mail (or by other equivalent or superior means as determined by the Wind Down Estate).

The Wind Down Trustee may withhold from amounts distributable to any Entity any amounts determined in the Wind Down Trustee's fiduciary discretion to be required by any law,

regulation, rule, ruling, directive, or other governmental requirement. Holders of Allowed Claims shall, as a condition to receiving distributions, provide such information and take such steps as the Wind Down Trustee may reasonably require to ensure compliance with withholding and reporting requirements and to enable the Wind Down Trustee to obtain certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.

### 6.3.    *Distribution Deadlines.*

Any Distribution to be made by the Wind Down Trustee pursuant to the Plan shall be deemed to have been timely made if made within thirty (30) days after the time therefore specified in the Plan or such other agreement. No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the date specified therefore herein.

### 6.4.    *Distributions Only on Business Days.*

Notwithstanding the foregoing provisions, if any Distribution called for under the Plan is due on a day other than a Business Day, such Distribution shall instead be made the next Business Day.

### 6.5.    *Rounding*

Any contrary provision hereof notwithstanding, for purposes of administrative convenience, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

### 6.6.    *Withholding Taxes*

Pursuant to Section 346(f) of the Bankruptcy Code, the Wind Down Trustee shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate.  From and as of the Effective Date, the Wind Down Trustee shall comply with all reporting obligations imposed on it by any Governmental Unit in accordance with applicable law with respect to such withholding taxes.  As a condition to making any distribution under the Plan, the Debtor, if prior to the Effective Date, or the Wind Down Trustee, if on or after the Effective Date, may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Debtor, if on the Effective Date, and the Wind Down Trustee, if on or after the Effective Date, to comply with applicable tax reporting and withholding laws.

### 6.7.    *Payment of Taxes on Distributions Received Pursuant to the Plan.*

(a) Any contrary provision hereof notwithstanding, as a condition to payment of any Distribution to a Claimant under the Plan, each Claimant shall provide a valid employer

identification, social security or other tax identification number (collectively the "Tax Information") for purposes of tax reporting by the Wind Down Trustee. All Entities that receive Distributions under the Plan shall be responsible for reporting and paying, as applicable, any taxes on account of their Distributions.

(b) At such time as the Wind Down Trustee believes that Distributions to a particular Class of Claims or Equity Interests is likely, the Wind Down Trustee shall request Tax Information in writing from the Claimants (the "Tax Information Request").

(c) Any Claimant who fails to respond to Tax Information Request within ninety (90) days from the date posted on the Tax Information Request, shall forfeit all Distributions such Claimant may otherwise be entitled to under the Plan and such forfeited funds will revert to the Wind Down Debtor's Estate, be treated as Wind Down Assets and be disbursed in accordance with the Plan.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.1. *Rejection of Executory Contracts and Unexpired Leases*

Except, with respect to executory contracts or unexpired leases that: (i) were previously assumed or rejected by order of the Bankruptcy Court, and (ii) are the subject of a pending motion to assume or reject, pursuant to Section 365 of the Bankruptcy Code, on the Effective Date, each executory contract and unexpired lease entered into by Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving such rejections pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date. The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases and the Wind Down Estate shall bear no liability for costs associated with such matters.

### 7.2. *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

All Proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the earlier of the Effective Date or an order of the Bankruptcy Court approving such rejection (the "Rejection Bar Date"). Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to, Confirmation of the Plan that is not Filed by the Rejection Bar Date will be forever barred from assertion against the Liquidating Estate and its property. All such Claims for which Proofs of Claim are timely and properly Filed and ultimately Allowed will be treated as Unsecured Claims subject to the provisions of Article III hereof.

### 7.3.    *Indemnification Obligations*

Any obligations of the Debtor pursuant to its organizational documents and bylaws or agreements, including amendments, entered into any time prior to the Effective Date, to indemnify, reimburse, or limit the liability of any covered persons (as defined therein) pursuant to the Debtor's certificates of incorporation, bylaws, policy of providing employee indemnification, applicable state law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against such covered persons based upon any act or omission related to such covered persons' service with, for, or on behalf of the Debtor prior to the Effective Date with respect to all present and future actions, suits, and proceedings relating to the Debtor shall not survive Confirmation of the Plan and shall be deemed cancelled and discharged as of the Effective Date.

### 7.4 *Termination of Compensation and Benefit Programs.*

To the extent not previously terminated, all employment and severance agreements and policies, and all employee compensation and benefit plans, policies and programs of the Debtor applicable generally to their respective current employees or officers as in effect on the Confirmation Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans and life, accidental death and dismemberment insurance plans, shall be terminated as of the Confirmation Date.

## ARTICLE VIII
## CONDITIONS PRECEDENT TO CONFIRMATION OF THE
## PLAN AND TO THE EFFECTIVE DATE

### 8.1.    *Conditions to Confirmation of the Plan*

Confirmation of the Plan is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by agreement of both the Debtor and Gerald in writing: (i) the Court shall have signed the Confirmation Order and entered it on the docket of the Chapter 11 Case, which Confirmation Order shall be in form and substance acceptable to the Plan Proponents and may not be amended, modified, supplemented, or clarified without the prior consent of the Plan Proponents prior to the Effective Date and the Wind Down Trustee after the Effective Date; and (ii) the Confirmation Order shall not be subject to any stay of effectiveness.

### 8.2.    *Conditions to Effective Date*

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent, any one or more may be waived by the Debtor in writing: (i) the Confirmation Order shall have become a Final Order or the Court shall have entered an Order waiving the fourteen (14) day stay under Bankruptcy Rule 3020(e) and 6004(g); (ii) the Confirmation Date shall have occurred; (iii) no request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code shall have been made, or if made, shall remain

28

pending; (iv) the appointment of the Wind Down Trustee shall have been confirmed by order of the Bankruptcy Court, which may be the Confirmation Order; and (v) the Debtor shall have sufficient Cash on hand to pay all Administrative Claims and U.S. Trustee Fees.

### 8.3.    *Effect of Failure of Conditions to Confirmation or the Effective Date*

If any one or more of the conditions in Articles 8.1 or 8.2 are not met, the Plan Proponents may withdraw the Plan and, if withdrawn, the Plan shall be of no further force or effect.

### 8.4.    *Effective Date*

The Effective Date shall be the Business Date following the satisfaction of the conditions set forth in Article 8.2 but shall not be later than 30 days after entry of the Confirmation Order. The Wind Down Trustee shall file a notice with the Bankruptcy Court of the occurrence of the Effective Date within five (5) Business Days thereof.

## ARTICLE IX
## INJUNCTIONS AND EXCLUPATION

### 9.1.    *Term of Injunctions or Stays*

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall be converted to injunctions under the Plan and shall remain in full force and effect until the Chapter 11 Case is closed or dismissed pursuant to 11 U.S.C. Section 362(c)(2)(A) and (B).

### 9.2    *General Injunctions.*

(a)      **Injunctions Against Interference with Consummation or Implementation of Plan**.  **As of and from the Effective Date, pursuant to 11 U.S.C. § 362(c)(2)(A) and (B), all Holders of Claims or Equity Interests are enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against the Debtor, the Estate and the Wind Down Trustee with the intent or effect of interfering with the consummation and implementation of the Plan and the transfers, payments and Distributions to be made hereunder.**

(b)      **Plan Injunction**.  In furtherance of the implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, to the extent permitted by law, all entities who have held, hold or may hold Claims against or Equity Interests in the Debtor, or its Estate that arose prior to the Effective Date shall be enjoined on or after the Effective Date pursuant to 11 U.S.C. § 362(c)(2)(A) and (B) from (a) commencing or continuing in, any manner, directly or indirectly, any action or other proceeding of any kind, against any Released Party or his, her, or its assets in respect of any claim released pursuant to this Plan and (b) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

9.3     *Releases by the Wind Down Estate, Holders of Claims and Equity Interests.*

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release of and by the Released Parties, as set forth in the Memorandum of Understanding, which includes by reference each of the related provisions and definitions contained therein, and, further, shall constitute the Bankruptcy Court's finding that the release of the Released Parties is (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to implementing the Plan; (d) a good faith settlement and compromise of the Claims released by this release; (e) in the best interests of the Debtor and the Estate; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity to be heard; and (h) a bar to any party asserting any Claim or Cause of Action released pursuant to the release contained in this section.

For the avoidance of doubt, nothing herein or in the Memorandum of Understanding shall serve as a release, injunction, or waiver, or any claim or cause of action by any party against Nanzo Holdings LLC or its affiliates.

(c)      **Cause of Action Injunction**.  Except as otherwise specifically provided for herein, on and after the Effective Date, pursuant to 11 U.S.C. § 362(c)(2)(A) and (B) all Entities other than the Wind Down Trustee are enjoined from commencing or continuing in any manner any action, objection or proceeding (whether directly, indirectly, derivatively or otherwise) on account of, or respecting any Claim, debt, right or Cause of Action that the Wind Down Trustee retains authority to pursue in accordance with the Plan. Notwithstanding the foregoing, nothing contained herein shall in any way impair or prevent any Entity from commencing or continuing any non-derivative independent cause of action that Entities may have against any non-debtor third parties.

(d)    <u>**No Bar to Claims Against Third Parties**</u>.   Except as otherwise specifically provided for by the Plan or Memorandum of Understanding, Holders of Claims or Equity Interests against the Debtor are not barred or otherwise enjoined by the Plan from pursuing any recovery against Persons that are not the Debtor.

### 9.3.    *Post-Confirmation Liability of Wind Down Trustee*

The Wind Down Trustee, together with its consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing (collectively, the "<u>Indemnified Parties</u>") shall not be liable for any and all liabilities, losses, damages, claims, causes of action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to any Entity for any action or inaction taken in good faith in connection with the performance or discharge of his or her duties under the Plan, except the Indemnified Parties will be liable for actions or inactions that are grossly negligent, fraudulent, or which constitute willful misconduct (in each case, liability shall be subject to determination by final order of the Bankruptcy Court). However, any act or omission taken with the approval of the Bankruptcy Court pursuant to a Final Order, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud or willful misconduct. In addition, the Liquidating Estate shall, to the fullest extent permitted by the laws of the State of New Jersey, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Estate or the implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Estate. To the extent the Liquidating Estate indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Wind Down Trustee in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as Estate Expenses. All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan.

### 9.4.    *No Discharge.*

Pursuant to Section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order will not discharge the Debtor of any debts.

### 9.5.    *Term of Injunctions or Stays.*

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

31

# ARTICLE X
# RETENTION OF JURISDICTION

### 10.1.  *Retention of Jurisdiction*

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

1.  To hear and determine any and all objections to the allowance of a Claim, actions to equitably subordinate a Claim, approval of any necessary claims reconciliation protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

2.  To administer the Plan, the Wind Down Estate, and the Wind Down Assets;

3.  To make determinations with respect to and to liquidate any disputed claims;

4.  To hear and determine any and all motions and/or objections to fix and allow any Claims arising therefrom;

5.  To enable the Wind Down Trustee to commence and prosecute any Causes of Action that may be brought pursuant to the Plan and Memorandum of Understanding after the Effective Date;

6.  To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document or instrument contemplated by the Plan, including without limitation the Stipulation and Memorandum of Understanding;

7.  To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified or vacated;

8.  To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

9.  To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order, or as may be authorized under the provisions of the Bankruptcy Code;

10.  To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

11.     To hear and determine any matters for which jurisdiction was retained by the Bankruptcy Court pursuant to prior orders;

12.     To hear and determine any matters related to the Stipulation and Memorandum of Understanding, including but not limited to the interpretation and implementation thereof;

13.     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code, and other applicable law;

14.     To close the Chapter 11 Case when administration of the Wind Down Estate has been completed and enter a final decree; and

15.     To hear objections to the proposed actions of the Wind Down Trustee.

This section shall not be deemed to be a waiver of any party's right to assert that the Bankruptcy Court lacks authority to enter Final orders in proceedings that are either statutory or constitutionally non-core proceedings.

### 10.2.    *Jurisdiction by Courts Other Than the Bankruptcy Court.*

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Chapter 11 Case, including with respect to the matters set forth in this Article, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE XI
## MISCELLANEOUS

### 11.1.    *Governing Law*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit hereto or instrument, agreement or other document executed in connection with the Plan provides otherwise, the Plan, the rights, duties and obligations arising under the Plan, and any claim or controversy directly or indirectly based upon or arising out of the Plan or the transactions contemplated by the Plan (whether based on contract, tort, or any other theory), including all matters of construction, validity and performance, shall be governed by and interpreted, construed and determined in accordance with, the internal laws of the State of New Jersey (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction).

### 11.2.    *Payment of Statutory Fees*

All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. After the Effective Date, the Wind Down Trustee shall pay, prior to the closing of the Chapter 11 Case, all fees payable

pursuant to 28 U.S.C. § 1930 which accrue after the Effective Date through and including the closing of the Bankruptcy Case.

### 11.3.    Corporate Action

Prior to, on and after the Effective Date, all matters provided for under the Plan that otherwise would require approval of the members or officers of the Debtor shall be deemed to have occurred and shall be in effect prior to, on and after the Effective Date pursuant to the applicable general corporation law of the jurisdiction in which the Debtor is organized without any requirement of further action by the members or the officers of the Debtor.

### 11.4.    Mutual Non-Disparagement

The Debtor, the Released Parties, and Gerald, including its affiliates, employees, agents, successors and assigns, each agree that, such party will not make any public statements which materially disparage any of the parties listed in this section.  Notwithstanding the foregoing, nothing in this section shall prohibit any person from making truthful, proven statements when required by law, order of a court or other body having jurisdiction.  All parties reserve their rights and remedies with respect to any disparaging statements made, whether subject to the foregoing exception or not.

### 11.5.    Modification and Revocation of Plan

The Plan Proponents reserve the right to revoke and withdraw the Plan at any time on or before the Confirmation Date. If the Plan Proponents revoke or withdraw the Plan pursuant to this section, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any entity in any further proceedings involving the Debtor. The Plan may only be amended with the express written consent of both the Debtor and Gerald.

### 11.6.    Severability.

In the event that any provision of the Plan is determined to be unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provisions of the Plan. To the extent that any provision of the Plan would, by its inclusion in the Plan, prevent or preclude the Bankruptcy Court from entering the Confirmation Order, the Bankruptcy Court, on the request of the Plan Proponents, may modify or amend such provision, in whole or in part, as necessary to cure any defect or remove any impediment to the confirmation of the Plan existing by reason of such provision.

### 11.7.    Exhibits

All exhibits attached to the Plan, any Plan Supplement are, by this reference, hereby incorporated into the Plan. The final version of all Exhibits to the Plan and any Plan Supplement

will be substantially in the forms attached hereto or thereto. The Plan Proponents reserve the right to make non substantive changes and corrections to such Exhibits in advance of the Confirmation Hearing. If any Exhibits are changed or corrected, the replacement Exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing.

### 11.8.  Filing of Additional Documents

The Proponents shall file with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 11.9.  Preservation of Rights Against Insurance

Nothing in the Plan shall diminish or impair the enforceability of any insurance policies that may cover Claims against the Debtor, its employees, its members, or any other Entity.

### 11.10. Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

### 11.11. Reservation of Rights

Neither the filing of the Plan nor any statement or provision contained in the Plan, nor the taking by any party in interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission against interest or (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are, specifically reserved. If the Plan is not confirmed or fails to become effective, neither the Plan nor any statement contained in the Plan may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without this Chapter 11 Case involving the Debtor, except with respect to Confirmation of the Plan.

### 11.12. Further Assurances

The Plan Proponents are authorized to execute, deliver, file or record such contracts, agreements, instruments, releases and other documents and take or cause to be taken such action as may be necessary or appropriate to effectuate, implement and further evidence the terms, provisions and intent of the Plan and to consummate the transactions and transfers contemplated by the Plan.

### 11.13. Section 1145 Exemption

Any rights issued under, pursuant to or in effecting the Plan, and the offering and issuance thereof by any party, including without limitation, the Wind Down Trustee shall be exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, Section 1145 of the Bankruptcy Code.

### 11.14. Section 1146 Exemption

Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, including, without limitation, any transfers to or by the Debtor, if on the Effective Date, and the Wind Down Trustee, if after the Effective Date, of the Debtor's property in implementation of or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

### 11.15. Determination of Tax Liability

The Wind Down Trustee is authorized, but not required, to request a determination under Section 505(b) of Bankruptcy Code of the tax liability of the Debtor for all taxable periods.

### 11.16. Computation of Time Periods

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall, not be included. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done, is the filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

### 11.17. Record Date

To the extent a "Record Date" is required for implementation of the Plan, the record date shall be the voting record date established by the Bankruptcy Court in the order approving the Plan or such other date as the Bankruptcy Court may set.

### 11.18. Binding Effect of Plan

The provisions of the confirmed Plan shall bind the Debtor, the Wind Down Trustee, any Entity acquiring property under the Plan, and any Holder of a Claim or Equity Interest, whether or not such Entity has filed a Proof of Claim or Equity Interest in the Chapter 11 Case, whether or not the Claim of such Claimant or the Equity Interest of such Equity Interest Holder is Impaired under the Plan, and whether or not such Claimant or Equity Interest Holder has accepted or rejected the Plan. All Claims and Debts shall be fixed and adjusted pursuant to the Plan. The Plan shall also bind any taxing authority, recorder of deeds or similar official for any county, state, or governmental unit or parish in which any instrument related to under the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in Section 1146(a) of the Bankruptcy Code.

### 11.19. Substantial Consummation

The Plan shall be deemed substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code, once there has been: (i) a transfer of all or substantially all of the property proposed by the Plan to be transferred; (ii) assumption by the Wind Down Trustee under the Plan of all or substantially all of the property dealt with by the Plan; and (iii) commencement of distributions under the Plan.

### 11.20. Confirmation Order and Plan Control.

To the extent the Confirmation Order and/or the Plan is inconsistent with any other agreement entered into between the Debtor and any third party, including but not limited to the Memorandum of Understanding, the Plan shall control over any other agreements and the Confirmation Order shall control over the Plan.

### 11.21. Waiver of Fourteen (14) Day Stay

The Plan Proponents request as part of the Confirmation Order a waiver from the Bankruptcy Court of the fourteen (14) day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the fourteen (14) day stay of Bankruptcy Rule 6004(g).

### 11.22. Notices

All notices in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested. All communication shall be deemed sent if sent to the Debtor and Gerald at the following address:

37

<u>If to the Debtor</u>:
Lowenstein Sandler
Attention: Andrew Behlmann, Esq. and Colleen M. Restel, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Phone: 973-597-2500
Facsimile:  973-597-2333
abehlmann@lowenstein.com
crestel@lowenstein.com

<u>If to Gerald Metals Sarl</u>
Genova Burns LLC.
Attention: Daniel M. Stolz, Esq., Scott S. Rever, Esq. and Gary N. Marks, Esq.
110 Allen Road, Suite 304
Basking Ridge, New Jersey 07920
Phone:  973-467-2700
Facsimile:  973-467-8126
dstolz@genovaburns.com
srever@genovaburns.com
gmarks@genovaburns.com

### *11.24. Plan Interest Rate*

If and to the extent it is determined by the Bankruptcy Court that interest is required to be paid on an Allowed Claim other than as set forth in the Plan, the interest rate to be used shall be the Plan Interest Rate as determined by the Bankruptcy Court for such Claim.

## **EXHIBIT A**

(To be filed)