## **WIND DOWN TRUSTEE AGREEMENT**

This Wind Down Trustee Agreement ("Agreement") is made on this ___ day of August, 2023 (the "Effective Date"), by and between MLS Berkowitz LLC, the debtor and debtor-in-possession (the "Debtor"), Gerald Metals Sarl ("Gerald"), the debtor's sole creditor and Edwin H. Stier, Esq. (the "Wind Down Trustee") (collectively "the Parties").

TERMS USED HEREIN AND OTHERWISE DEFINED SHALL HAVE THE MEANINGS ASCRIBED TO THEM IN THE MLS BERKOWITZ LLC MEMORANDUM OF UNDERSTANDING AND THE JOINT PLAN OF ORDERLY LIQUIDATION (THE "PLAN")

### **RECITALS:**

A. On June 20, 2023 (the "Petition Date"), Gerald filed an involuntary petition for relief pursuant to Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

B. The Debtor filed a Motion to Dismiss the involuntary Chapter 7 petition and the Court scheduled an evidentiary hearing both with regard to dismissal of the involuntary Chapter 7 petition and the appointment of an interim trustee.

C. On August 3, 2023, the Debtor and Gerald, through their counsel, appeared before the Bankruptcy Court and placed upon the record a detailed agreement, pursuant to which the involuntary Chapter 7 case would be converted to a voluntary Chapter 11 case and the Debtor and Gerald would proceed with a "prepackaged" Joint Plan of Orderly Liquidation for the Debtor.

D. On August ___, 2023, the Debtor and Gerald filed the Joint Plan of Orderly Liquidation ("Plan") with the Bankruptcy Court. The Plan appoints a Wind Down Trustee, who, as of the Effective Date, has the powers and duties set forth in the Plan, the Memorandum of Understanding, this Agreement and the order confirming the Plan (the "Confirmation Order"). The

Parties hereto acknowledge that the Wind Down Trustee shall not act individually, but on behalf of the Wind Down Estate and will succeed to the rights and obligations of the Debtor as set forth in the Plan, the Memorandum of Understanding, the Confirmation Order and this Agreement.

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, the Parties hereto agree as follows:

## ARTICLE I

## ACCEPTANCE OF POSITION

**1.1** **Acceptance.**

By signing this Agreement, Edwin H. Stier, Esq. accepts his appointment as the Wind Down Trustee and agrees to observe and perform all duties and obligations imposed upon the Wind Down Trustee under the Plan, this Agreement, the Confirmation Order and any other applicable orders of the Bankruptcy Court, and applicable law.

## ARTICLE II

## THE WIND DOWN TRUSTEE

**2.1** **General Powers, Rights and Responsibilities.**

On the Effective Date, the Wind Down Trustee shall become the exclusive representative of the Wind Down Estate. The powers and duties of the Wind Down Trustee shall include, without limitation or further order of the Bankruptcy Court, the following:

(a) to invest Cash in accordance with Section 345 of the Bankruptcy Code, and withdraw and make distributions of Cash to Holders of Allowed Claims and pay taxes and other obligations owed by the Debtor or incurred by the Wind Down Trustee in connection with the wind-down of the Estate in accordance with the Plan;

(b) to receive, manage, invest, supervise, and protect the Assets, including paying taxes or other obligations incurred in connection with administering the Assets;

(c) to engage attorneys, consultants, agents, employees and all professional persons, to assist the Wind Down Trustee with respect to the Wind Down Trustee's responsibilities;

2

(d) to pay the fees and expenses for the attorneys, consultants, agents, employees and professional persons engaged by the Wind Down Trustee and to pay all other expenses in connection with administering the Plan and for winding down the affairs of the Debtor in accordance with the Plan;

(e) to execute and deliver all documents, and take all actions, necessary to consummate the Plan and liquidate the Debtor's Assets;

(f) to dispose of, and deliver title to others of, or otherwise realize the value of, all the remaining Assets;

(g) to coordinate the collection of any Accounts Receivable that were not sold pursuant to the Sale Transaction and/or to collect any amounts, coordinate collection of any accounts receivable or any other funds due to the Debtor;

(h) to coordinate the storage and maintenance of the Debtor's books and records;

(i) to oversee compliance with the Debtor's accounting, finance and reporting obligations;

(j) to prepare any and all required reports and financial statements, including required U.S. Trustee reports, until such time as a final decree has been entered;

(k) to oversee the filing of final tax returns, audits and other dissolution documents, if required;

(l) to perform any additional corporate actions as necessary to carry out the wind-down, liquidation and ultimate dissolution of the Debtor;

(m) except as otherwise provided herein or in the Plan, to object to Claims against the Debtor;

(n) except as otherwise provided herein or in the Plan, to compromise and settle Claims against the Debtor;

(o) Except as otherwise provided herein or in the Plan, to act on behalf of the Debtor in all adversary proceedings and contested matters (including, without limitation, any Causes of Action), pending as of the Effective Date or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, or dispute any adversary proceedings or contested matters (including, without limitation, any Causes of Action) and otherwise pursue actions involving Assets of the Debtor that could arise or be asserted at any time under the Bankruptcy Code or otherwise, unless otherwise specifically waived or relinquished in the Plan;

(p) to implement and/or enforce all provisions of the Plan; and to use such other powers as may be vested in or assumed by the Wind Down Trustee pursuant to the Plan or order of the Bankruptcy Court or as may be necessary and proper to carry out the provisions of the Plan;

(q) to exercise such powers as would be held by a trustee under 11 U.S.C. §323 and 11 U.S.C. §1106.

**2.2** **Assumption of Control and Maintenance of Accounts, Reserves, and Escrows.**

On the Effective Date, the Wind Down Trustee shall assume, maintain and control all funds of the Debtor, bank accounts, reserves and escrows. In consultation with Gerald, and subject to Court review if after disputes arise between the Wind Down Trustee and Gerald, the Wind Down Trustee shall maintain the Reserves in accordance with the Plan, the Memorandum of Understanding and this Agreement:

(a) Administrative Reserve. On the Effective Date or as soon thereafter as is practicable, the Wind Down Trustee shall assume control of all assets of the Debtor. The Trustee shall advise Gerald of the amounts the Trustee believes should be reserved for ongoing costs of the Estate, including professional fees, such reserve not to exceed $200,000. The Trustee shall confer with Gerald with regard to the appropriate amount of the Reserve. In the event of disputes between Gerald and the Trustee with regard to appropriate reserves, such disputes shall be resolved by the Bankruptcy Court.

**2.3** **Distributions.**

Following the Effective Date, Distributions shall be made by the Wind Down Trustee to Gerald within 7 business days from any point when the funds in the Wind Down Estate exceed $200,000.00(including investments as provided in Article 2.5).

**2.4** **Transactions with Related Persons.**

Notwithstanding any other provisions of this Agreement, the Wind Down Trustee shall not knowingly, directly or indirectly, sell or otherwise transfer all or part of the Assets to, or contract with, (a) any relative, employer, or agent of the Wind Down Trustee or (b) any person of which any employer or agent of the Wind Down Trustee is an affiliate by reason of being a trustee, managing director, officer, partner, principal, or direct or indirect beneficial owner of five percent (5%) or more of the outstanding capital stock, shares, or other equity interest of such persons unless, in each such case, after full disclosure of such interest or affiliation, such transaction is approved by the Bankruptcy Court and determined that such transaction is fair and reasonable and no less favorable than terms available for a comparable transaction with unrelated persons.

**2.5** **Investment of Cash.**

The Wind Down Trustee shall invest any Cash held in any Reserve in (A) direct obligations of the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America; (B) money market deposit accounts, checking accounts, savings accounts or certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state thereof; or (C) any other investments that may be permissible under (i) Section 345 of the Bankruptcy Code or (ii) any order of the Bankruptcy Court. Such investments shall mature in such amounts and at such times as the Wind Down Trustee, in the Wind Down Trustee's discretion, shall deem appropriate to provide funds when needed to transfer funds or make payments in accordance with the Plan and this Agreement. The interest or other income earned on the investments of the Cash in any given Reserve established pursuant to this Agreement, the Plan, or any order of the Bankruptcy Court shall constitute a part of such

5

Reserve, unless and until transferred or distributed pursuant to the terms of the Plan, this Agreement, or order of the Bankruptcy Court.

    2.6    **Control and Maintenance of Assets, Reserves, and Cash.**

Notwithstanding anything in this Agreement to the contrary, the Wind Down Trustee is authorized in his sole discretion to (i) move or transfer any Asset, Reserve, or Cash among various permitted investments at any time in order to comply with the rules of independence applicable to the accounting profession and (ii) refrain from making any investment or engaging in any other activity which may be in violation of such rules. The Wind Down Trustee shall not be liable for any action or omission which the Wind Down Trustee reasonably believes to be required for compliance with the preceding sentence.

    2.7    **Compliance with Tax Withholding and Reporting Requirements.**

With respect to all payments and distributions made under the Plan, the Wind Down Trustee shall cause the Debtor and/or the Liquidating Estate to comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority and, in the event the Wind Down Trustee retains accountants or other professionals, shall have the right to rely on the advice of such in connection with all tax matters.

    2.8    **Books, Records, and Tax Returns.**

The Wind Down Trustee shall preserve for the benefit of the Wind Down Estate all documents and files of the Estate, including electronic data hosted on remote servers, that are necessary for the prosecution of the Causes of Action and Claims resolution process. After the Effective Date, the Wind Down Trustee shall be permitted, in his sole discretion, to abandon, destroy, or otherwise dispose of those books and records in compliance with applicable nonbankruptcy law, provided, however, that, in the Wind Down Trustee's discretion, these books and records may be destroyed or disposed of beginning two (2) years after the Effective Date,

notwithstanding any applicable laws, rules, or regulations that would have required the Debtor to retain such books and records. Further, the Wind Down Trustee shall preserve and maintain all documents, data and information responsive to any subpoena, litigation hold, or discovery request to which the Debtor is subject on or after the Effective Date, provided that the Wind Down Trustee was served with a subpoena or discovery request before the time period to destroy records. The Wind Down Trustee shall file notices with the Bankruptcy Court reflecting any abandonment of books and records prior to the two years from the Effective Date.

**2.9    Post-Confirmation Reports and Fees.**

Following the Effective Date and until the Bankruptcy Case is closed, converted or dismissed, not less than once every ninety (90) days, the Wind Down Trustee shall be responsible for the filing of all post-Effective Date reports required during such periods with the U.S. Trustee when due and payment from the Wind Down Estate of all post-Effective Date fees when due, charged or assessed against the Wind Down Estate under 28 U.S.C. § 1930 during such periods, together with applicable interest pursuant to 31 U.S.C. § 3717.

**2.10    Reliance by Wind Down Trustee.**

The Wind Down Trustee may rely, and shall be fully protected in acting or refraining from acting if he relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that he reasonably believes to be genuine and to have been signed or presented by the proper party or parties or to have been sent by the proper party or parties, and the Wind Down Trustee may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein and shall be fully protected personally in acting thereon. The Wind Down Trustee may consult with and retain counsel and other professionals with respect to matters in their area of knowledge and/or experience. Any opinion

7

of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Wind Down Trustee.  Further, the Wind Down Trustee shall be entitled to rely upon the advice of professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon; provided, however, that this limitation of liability shall not release or absolve any professional for willful misconduct, fraud or gross negligence that may give rise to a claim against the Wind Down Trustee.  The Wind Down Trustee shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan, or any other document executed in connection therewith, and the Wind Down Trustee shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

### 2.11 **Reliance by Persons Dealing with the Wind Down Trustee.**

In the absence of actual knowledge to the contrary, any person dealing with the Debtor and the Wind Down Estate shall be entitled to rely on the authority of the Wind Down Trustee to act on behalf of the Wind Down Estate and the Debtor, and shall have no obligation to inquire into the existence of such authority.

### 2.12 **Compensation.**

(a) The Wind Down Trustee shall be compensated from the Administrative Reserves. The Wind Down Trustee's compensation shall be $15,000.00 per month, payable on the first day of each month for the first 6 months. The Compensation shall be reassessed after 6 months for future periods, but at all times not to exceed $15k per month. If the compensation can not be agreed, the Wind Down Trustee shall either accept the proposed compensation or may resign with at least a 30 days' notice.  The Wind Down Trustee shall also be entitled to reimbursement of all of his reasonable out-of-pocket expenses incurred in carrying out the terms of the Plan and this

8

Agreement, including telephone, travel, facsimile, courier, postage, and other similar out-ofpocket expenses.

(b)  The Wind Down Trustee shall seek in advance confirmed budgets and where possible capped budgets for monthly professional expenses of all professionals retained Subject to pre- agreed budget with the creditors. The fees and expenses, unless disputed by the Wind Down, of professionals retained by the Wind Down Trustee on and after the Effective Date, shall be paid by the Wind Down Trustee within forty five (45) days of receipt or presentment of monthly, detailed invoices in respect of their services and expenses, or on such other terms as the Wind Down Trustee and the applicable professional may agree to, without the need for further Bankruptcy Court approval. Such post-Effective Date professionals shall provide the Wind Down Trustee with monthly, detailed invoices in respect to their services and expenses.  The Wind Down Trustee shall, within three (3) days receipt of such invoices, share such invoices with Gerald. Notwithstanding the foregoing, if the Wind Down Trustee or Gerald objects in writing to the payment of any such compensation, within thirty  days of delivery of the professional invoices, such disputed amount shall not be paid prior to the earlier of the resolution of such dispute or a ruling by the Bankruptcy Court.

**2.14    Gerald Funding of Wind Down Estate and Approval of Budgets**

As the sole Creditor of this Bankruptcy Estate, with an Allowed Claim of $60,000,000.00, Gerald appropriately has a right to supervise the ongoing costs of the Wind Down Estate.  No  later than seven (7) days prior to the commencement of each month, the Wind Down Trustee shall provide to Gerald an anticipated budget of costs and expenses for the coming months.  Should disputes arise with regard to the budgets, either party shall have the right to bring such dispute before the Bankruptcy Court for resolution.  Gerald recognizes that there may be periods of time

where the Administrative Reserves are insufficient to pay the costs and expenses of the Wind Down Trustee and his professionals. Gerald agrees to fund the Fees of the Administrator hereunder for the first 6 months of this agreement and further, subject to the agreement of such fees. Gerald Agrees, subject to its advance approval of the budget, to fund Administrative Reserves, as appropriate. Gerald shall have the right to provide the Wind Down Trustee with written notice that Gerald will no longer fund the Administrative Reserves and such notice will become effective fourteen (14) days from the issuance of such written notice.

### 2.15 Conflicts.

Should the Wind Down Trustee perceive or any party in interest assert that the Wind Down Trustee holds a conflict of interest with regard to the performance of any aspect of his duties under the Wind Down Trustee Agreement, the issue shall first be brought to the attention of the United States Trustee and thereafter brought before the Bankruptcy Court for resolution.

### 2.16 Windup and Closing Case.

Once (a) the Plan has been fully administered, (b) all Disputed Claims have been resolved, (c) all Causes of Action have been resolved, and (d) all Assets have been reduced to Cash or abandoned, the Wind Down Trustee shall effect a final distribution of all Net Estate Assets (after reserving sufficient Cash to pay all unpaid expenses of administration of the Plan and all expenses reasonably expected to be incurred in connection with the final distribution) to Holders of Allowed Claims in accordance with the Plan.

After the Debtor's Estate has been fully administered, the Wind Down Trustee shall file the final account and report with the Bankruptcy Court. At such time, the Wind Down Trustee shall move for the Bankruptcy Court to enter a Final Decree closing the Bankruptcy Case pursuant to Section 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

**2.17   No Agency Relationship.**

The Wind Down Trustee shall not be deemed to be the agent for any of the Holders of Claims in connection with the funds held or distributed pursuant to the Plan. The Wind Down Trustee shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence, willful misconduct or fraud. The Wind Down Trustee shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate against any and all claims arising out of his or her duties under the Plan, except to the extent his or her actions constitute gross negligence, willful misconduct or fraud. The Wind Down Trustee may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he or she believes to be genuine and to have been signed or presented by the proper party or parties. The Wind Down Trustee may rely upon information previously generated by the Debtor and such additional information provided to him or her by former employees of the Debtor.

## ARTICLE III

## RELEASES AND INDEMNIFICATION; INSURANCE

**3.1   Releases; Indemnification.**

The Wind Down Trustee, each of his respective designees, employees or professionals or any duly designated agent or representative of the Wind Down Trustee shall not be liable for any act or omission taken or omitted to be taken in their respective functions as outlined in the Plan, this Agreement and the order confirming the Plan other than for acts or omissions resulting from willful misconduct, gross negligence, or intentional fraud as determined by Final Order of the Bankruptcy Court. The Wind Down Trustee may, in connection with the performance of his respective functions, and in his sole and absolute discretion, consult with attorneys, accountants,

11

financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such attorneys or other professionals.. Notwithstanding such authority, the Wind Down Trustee shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and his determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or intentional fraud as determined by Final Order of the Bankruptcy Court. The Wind Down Estate shall indemnify and hold harmless the Wind Down Trustee from and against all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of the Plan, the order confirming the Plan and this Agreement; <u>provided</u>, <u>however</u>, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or intentional fraud.

    3.2    **<u>Insurance</u>**.

The Wind Down Trustee shall be authorized to obtain and pay for out of the Administrative Reserve (subject to an approved budget) all reasonably necessary business insurance coverage for himself, his agents, representatives, professionals, or other independent contractors, the Debtor, including, but not limited to, coverage with respect to (i) any property that is or may in the future become the property of the Debtor or the Wind Down Estate and (ii) the liabilities, duties, and obligations of the Wind Down Trustee, , in the form of an errors and omissions policy or otherwise, the latter of which insurance coverage may, at the sole option of the Wind Down Trustee, remain in effect for a reasonable period (not to exceed two (2) years) after the termination of this Agreement.

## ARTICLE IV

## TERMINATION AND RESIGNATION

**4.1** **Term of Service.**

The Wind Down Trustee shall serve until the earliest of (a) the completion of all the Wind Down Trustee's duties, responsibilities and obligations under the Plan and this Agreement, (b) dissolution of all Liquidating Debtor in accordance with the Plan, and (c) the Wind Down Trustee's death, incapacitation, illness for a period of 30 days or longer, resignation, or removal [(d) Trustee is requested in writing by Gerald to be replaced with a successor Trustee, which termination shall take place 10 calendar days from such written request .].

**4.2** **Resignation.**

The Wind Down Trustee may resign as such by written notice to the Bankruptcy Court and the notice parties included in Section 5.5 hereof. In the event of his resignation, the Wind Down Trustee shall give at least thirty (30) days' notice of such resignation to the Bankruptcy Court and the notice parties included in Section 5.5 hereof. Such resignation will not be effective until expiration of that thirty-day notice period; provided, however, that the Wind Down Trustee shall continue to serve as Wind Down Trustee after resignation until such resignation is effective under this paragraph or appointment of a successor Wind Down Trustee by the Bankruptcy Court, whichever occurs earlier. Notwithstanding the foregoing, the Wind Down Trustee may resign and terminate the performance of his services as the Wind Down Trustee at any time upon written notice to the Bankruptcy Court and the notice parties included in Section 5.5 hereof if the Wind Down Trustee determines in his sole discretion that the performance of any part of this Agreement would be in conflict with law or independence or professional rules.

**4.3    Removal of the Wind Down Trustee for Good Cause.**

Gerald may seek to remove the Wind Down Trustee with or without cause by filing the appropriate motion with the Bankruptcy Court upon at least thirty (30) days' prior notice. For purposes of both this provision, good cause means:

(a)    theft, dishonesty, fraud or willful misconduct. including intentional falsification of any employment or other records;

(b)    gross negligence or material failure in the performance of any material duties under the Plan, which is (i) repeated or continued after written notice of, and a reasonable opportunity to cure, such gross negligence or material failure, and (ii) injurious to the Liquidating Debtor; or

(c)    the arrest, indictment or conviction (including any plea of guilty or no contest) for any felony or other crime involving dishonesty or moral turpitude.

(d)    Breach of this Agreement.

If there is a dispute between the Wind Down Trustee and a creditor regarding whether good cause exists for removal, and such dispute is not consensually resolved within thirty (30) days thereafter, such dispute will be resolved by the Bankruptcy Court. For the avoidance of doubt, during the pendency of any dispute before the Bankruptcy Court regarding removal of the Wind Down Trustee and any appeals therefrom, the Wind Down Trustee shall continue to discharge the rights, obligations, and duties of the Wind Down Trustee set forth in the Plan and this Agreement.

**4.4    Continuity; Appointment of Successor Wind Down Trustee.**

(a)    The death, incapacity, resignation, or removal of the Wind Down Trustee shall not operate to terminate any agency or employment created by this Agreement or invalidate any action theretofore taken by the Wind Down Trustee. In the event of a vacancy by reason of death, incapacity or removal of the Wind Down Trustee, Gerald shall appoint a successor Wind Down Trustee, subject to approval of the Bankruptcy Court. If no successor Wind Down Trustee shall

14

have been appointed within 90 days of the occurrence or effectiveness, as applicable, of the prior Wind Down Trustee's resignation, death, incapacity, or removal, then counsel to the Wind Down Trustee or the Bankruptcy Court, upon the motion of any party-in-interest shall appoint a successor Wind Down Trustee.

(b) The successor Wind Down Trustee, without any further act, shall become vested with all the rights, powers, and duties of the Wind Down Trustee; provided, however, that no Wind Down Trustee shall be liable for the acts or omissions of any prior or later Wind Down Trustee. Every successor Wind Down Trustee appointed hereunder shall execute, acknowledge, and deliver to the Notice Parties listed in section 5.5 below an instrument accepting such appointment subject to the terms and provisions hereof.

## ARTICLE V

## MISCELLANEOUS PROVISIONS

**5.1** **Descriptive Headings.**

The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

**5.2** **Governing Law.**

This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey without regard to the rules of conflict of laws of the State of New Jersey or any other jurisdiction.

**5.3** **Counterparts; Effectiveness.**

This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement. This

Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.

**5.4** **Severability; Validity.**

If any provision of this Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, and to such end, the provisions of this Agreement are agreed to be severable.

**5.5** **Notices.**

Any notice or other communication hereunder shall be in writing and shall be deemed given upon (a) confirmation of receipt of a facsimile transmission, (b) confirmed delivery by a standard overnight carrier or when delivered by hand, or (c) the expiration of five (5) Business Days after the day when mailed by registered or certified mail (postage prepaid, return receipt requested), addressed to the respective parties at the following addresses (or such other address for a party as shall be specified by like notice):

To the Wind Down Trustee:

Edwin H. Stier, Esq.
EH Stier, LLC
176 Tamarack Circle
Skillman, NJ 08558
ehstier@aol.com

With a copy to:

Genova Burns LLC
Attention: Daniel M. Stolz, Esq.
110 Allen Road, Suite 304
Basking Ridge, New Jersey 07920
Phone: 973-467-2700
Facsimile: 973-467-8126
dstolz@genovaburns.com

16

> Gerald Metals Sarl
> Attn: Gary Lerner, Board Member and EVP
> 750 Washington Blvd., 5th Floor
> Stamford, CT 06901

**5.6** **Relationship to Plan**.

The principal purpose of this Agreement is to aid in the implementation of the Plan and the Confirmation Order and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. To that end, the Wind Down Trustee shall have full power and authority to take any action consistent with the purposes and provisions of the Plan and the Confirmation Order. In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan and/or the Confirmation Order, the provisions of the Plan and Confirmation Order shall control.

**5.7** **Amendments**.

This Agreement may be amended or modified by the Wind Down Trustee, upon consent by Gerald and as necessary to implement the provisions of the Plan and to facilitate the orderly and effective liquidation of the

Liquidating Estate's remaining assets and to maximize the recovery thereof; provided that any material amendments shall be subject to the approval of the Bankruptcy Court.

**5.7** **No Agency**.

Nothing in this Agreement shall constitute or be deemed to constitute an agency, partnership, or joint venture between the Parties hereto or constitute or be deemed to constitute any Party the agent or employee of the other Party for any purpose whatsoever, and neither Party shall have authority or power to bind the other Party or to contract in the name of, or create a liability against, the other Party in any way or for any purpose.

**5.8** **Retention of Jurisdiction.**

As provided in Article 10.1 of the Plan, the Bankruptcy Court shall retain jurisdiction over the Wind Down Estate and the Debtor to the fullest extent permitted by law, including, but not limited to, for the purposes of interpreting and implementing the provisions of this Agreement.

**5.9** **No Assignment.**

Neither Party hereto may assign any of its rights or obligations hereunder to any other person, without the prior written consent of both Parties, and approval by the Bankruptcy Court.

**5.10** **Commencement Date.**

This Agreement shall become effective on the Effective Date of the Plan.

[THIS PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, the Parties have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers at of the date first above written.

MLS BERKOWITZ LLC

By:_____
    SETH BERKOWITZ

GERALD METALS SARL

By:_____
    GARY LERNER

WIND DOWN TRUSTEE

By:_____
    EDWIN H. STIER